[No. H007341. Sixth Dist. Dec. 19, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID JAMES COSTA et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of section titled "Section II."

## COUNSEL

Rose & Arnold, John M. Wadsworth, Ronald W. Rose, Karen Kelly and Paul Couenhoven for Defendants and Appellants..

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Anne K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ELIA, J.—Appellants David Costa and Deanna Costa appeal from their convictions, after a jury trial, of knowingly making their home available for the manufacturing of a controlled substance for sale or distribution (Health and Saf. Code, § 11366.5, subd. (a)) and David Costa's conviction of manufacturing amphetamine (Health and Saf. Code, § 11379.6).[1] On appeal, they contend that the prosecution failed to plead and prove that the manufacturing of the controlled substance was for the purpose of sale or distribution and that this is an element of section 11366.5, subdivision (a). They further contend that the trial court had a sua sponte duty to advise the jury that police agents are immune from narcotics prosecutions and that if appellants reasonably believed they were helping an agent of the police they could not be found guilty. We reverse in part and affirm in part.

In the unpublished Section II of this opinion we discuss appellants' remaining contentions: 1) that when appellant Deanna Costa's case was dismissed pursuant to a plea bargain made with David Costa, the court had no authority to reinstate the case against her when David Costa withdrew his plea; 2) that the trial court erred in denying appellants' Penal Code section 1538.5 motion because no exigency justified the police entry into their home; 3) that the trial court abused its discretion in not allowing into evidence certain tapes and transcripts; 4) that the prosecutor and the court interfered with appellants' right to present witnesses; 5) that the prosecutor committed multiple acts of misconduct; and 6) that the trial court erred in denying appellants' new trial motion.

---

[1]All further section references are to the Health and Safety Code unless otherwise specified.

*Section I*

The Costa home came to the attention of the authorities one November afternoon in 1987 when two officers arrived there in response to a 911 call about a fight between a man and woman. They found an open sliding glass door which they entered. In the attached garage they found various chemicals and equipment commonly used in the production of amphetamine. Inside the house they found books about chemistry and chemical equipment, a scale, filter papers, chemicals, lab equipment and a recipe for making amphetamine and methamphetamine. They also found a notebook containing information about cutting agents for various controlled substances and chemicals used to manufacture methamphetamine. No appreciable quantity of amphetamine was found in the house or the garage.

Later, police found $5,000 in cash in appellants' truck. Chemical tests detected the presence of amphetamine in both appellants' fluid samples. Methamphetamine was also detected in David Costa's sample.

Appellants were charged with violating section 11366.5, subdivision (a) which provides: "Any person who has under his or her management or control any building, room, space, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, who knowingly rents, leases, or makes available for use, without compensation, the building, room, space, or enclosure for the purpose of unlawfully manufacturing, storing, or distributing any controlled substance for sale or distribution shall be punished by imprisonment in the county jail for not more than one year, or in the state prison."

Based on the language "for sale or distribution" found at the end of this statute, trial counsel requested that the jury be instructed that the prosecution had to prove that the charged manufacturing was "for sale or distribution." The court said that this element did not have to be proven, stating, "I don't think that the distributing aspect is . . . necessary under the charge in this case." The court instructed the jury that the prosecution had to prove only two elements: 1) that a person knowingly permitted a controlled substance to be manufactured or stored; 2) in a building under his or her management or control.

Appellants contend that this was error; that the language of section 11366.5 subdivision (a) requires proof that the manufacturing which is unlawfully permitted be for the purpose of sale or distribution to others. Respondent argues that the phrase "for sale or distribution" in the section modifies solely the word "distribution" to the exclusion of the words "manufacturing" and "storing."

The issue raised here is one of statutory construction: What word or phrase is qualified by the phrase "for sale or distribution"?[2] ■ A basic rule of statutory construction is that if there is some uncertainty as to the reach of a modifying phrase, it should be construed as referring to the immediately preceding word or phrase and not to more remote phrases. (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191]; *People* v. *Corey* (1978) 21 Cal.3d 738, 742 [147 Cal.Rptr. 639, 581 P.2d 644]; *People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250].) Our Supreme Court has referred to this principle as the "last antecedent rule."

■ In section 11366.5 subdivision (a), the phrase which immediately precedes "for sale or distribution" is the phrase "controlled substance;" the word "distributing" is more remote. Under the last antecedent rule the phrase "for sale or distribution" must be viewed as modifying the phrase "controlled substance," and not the more remote word "distributing." Obviously, the phrase "controlled substance" modifies all three preceding words, namely, "manufacturing," "storing," and "distributing." Therefore, since "for sale or distribution" modifies the phrase "controlled substance," it applies equally to all three prohibited activities, including manufacturing.

■ Another rule of statutory construction is that "In construing the words of a statute . . . an interpretation which would render terms surplusage should be avoided, and every word should be given some significance, leaving no part useless or devoid of meaning." (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) ■ Applying this principle, the phrase "for sale or distribution" must apply to the manufacturing or storing of any controlled substance. Otherwise, the Legislature intended to prohibit "manufacturing," "storing," or "distributing for distribution," which renders the words "for distribution" meaningless.

The history of this section reveals that the intent of the Legislature was that the phrase "for sale or distribution" apply to the manufacturing of controlled substances. Assembly Bill No. 1917 was originally introduced on March 30, 1981, with the stated goal of adding sections 11366.5 and 11366.7 to the Health and Safety Code. The stated purpose of the bill was to reach owners or managers of property and retailers or wholesalers of chemicals for their illegal activities. In both sections, the Legislature wanted to reach people who aided those engaged in manufacturing controlled substances for sale or distribution to others. This phrase was made an integral part of both sections.

---

[2]Nothing in this opinion is intended to express our view on the possible interpretations of other language in this statute.

Versions of Assembly Bill No. 1917 show that the expressed intent in enacting section 11366.5 was to reach the manufacturing, storing, and distributing of controlled substances undertaken for the purpose of sale or distribution to others. The Legislative Counsel's Digest of Assembly Bill No. 1917, as originally introduced on March 30, 1981, stated that the bill "would . . . make it unlawful for any person who has under his or her management or control . . . any building . . . to . . . knowingly permit the building . . . to be used for the purpose of manufacturing, storing, or distributing any controlled substance for sale or distribution to another person."

Through every subsequent amendment and revision of this bill the Legislative Counsel's digest contained this identical recitation. In the Legislative Counsel's summary, the phrase "for sale or distribution to another person" modifies the phrase "controlled substance" which applies equally to manufacturing, storing, or distributing. Although in the process of amendments adopted by the Senate on March 17, 1982, the phrase "for the purpose of sale or distribution to other persons" was shortened to simply "for sale or distribution," the general goal of the statute, as explained by the Legislative Counsel's summary, remained constant. The Legislature sought to reach landlords and others who knowingly allowed the manufacturing or storage of controlled substances for sale or distribution to other persons to take place on premises they owned or managed.

A consideration of section 11366.7, enacted pursuant to the same bill which gave birth to section 11366.5, also supports appellants' position that "for sale or distribution" modifies "controlled substance." Similar language is used in section 11366.7, which punishes as a felony any retailer or wholesaler who sells chemicals or equipment with the knowledge or intent that the purchased item "will be used to unlawfully manufacture, compound, convert, process, or prepare a controlled substance for unlawful sale or distribution." Certainly, the phrase "for unlawful sale or distribution" applies not only to preparing a controlled substance, but equally applies to manufacturing, compounding, and all the other processes described in the statute.

The Legislature passed a bill to enact sections 11366.5 and 11366.7 at the same time and using similar language. They should be interpreted to reach the same goal. (*Isobe* v. *Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 590-591 [116 Cal.Rptr. 376, 526 P.2d 528].) The goal was to reach those people who knowingly aid drug dealers who manufacture, store, or prepare controlled substances for the purpose of selling or distributing those controlled substances to others. A prosecution under section 11366.5, subdivision (a) thus requires proof that the manufacturing which the owner or manager allowed was for the purpose of sale or distribution to others.

The trial court refused the defense request to include in the instruction on the elements of section 11366.5 the requirement that the prohibited manufacturing be "for sale or distribution." As a result of this error, the jury was thus not instructed on that element of section 11366.5.

■ A defendant has a constitutional right to have the jury determine every material issue presented by the evidence. (*People* v. *Lee* (1987) 43 Cal.3d 666, 675, fn. 1 [238 Cal.Rptr. 406, 738 P.2d 752]; *People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33]; *People* v. *Lemus* (1988) 203 Cal.App.3d 470, 478 [249 Cal.Rptr. 897].) This court has previously held that "the test for prejudice resulting from instructional error, at least regarding elements of the offense, is now whether the evidence eliminates any reasonable doubt that a defendant would have been convicted under proper instructions." (*People* v. *Landry* (1989) 212 Cal.App.3d 1428, 1440 [261 Cal.Rptr. 254].) ■ Because the prosecutor took the position that he had to prove only that amphetamine was manufactured at the Costas' residence with their knowledge and consent, he never sought to introduce evidence to suggest that the manufacturers of the amphetamine intended to sell or distribute it. The evidence he did present could hardly be seen as sufficient to eliminate any reasonable doubt that appellants would have been convicted under proper instructions. Even the trial court commented, after all the evidence had been received, "I don't think that the distributing aspect is shown here . . . ."

We thus agree with appellants' challenge to the sufficiency of the evidence for conviction on this count. "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." (*Burks* v. *United States* (1978) 437 U.S. 1, 11 [57 L.Ed.2d 1, 9, 98 S.Ct. 2141].) Because of the failure of proof that the manufacturing was for sale or distribution, the double jeopardy clause of the Constitution prohibits retrial of this count. (*People* v. *Hockersmith* (1990) 217 Cal.App.3d 968 [266 Cal.Rptr. 380]; *People* v. *Jones* (1988) 203 Cal.App.3d 456, 459-460 [249 Cal.Rptr. 840].) Appellants' convictions for violating section 11366.5 must thus be reversed and retrial is barred.

■ Appellants also contend the trial court erred in failing to instruct sua sponte that police agents are immune from Health and Safety Code prosecutions, and that if they mistakenly but reasonably believed they were helping an agent of the police, they could be found not guilty.

At trial, David Costa testified that he worked for a refrigeration company as an engineer and project manager. He explained that he had installed a

laboratory room or testing room in his garage years ago to test oil and water samples. He had purchased the house in the mid-1970's. Sometime before that, when he lived in the Santa Cruz mountains, he had met a neighbor named Russell Wolden. They became fairly good friends. In November of 1987, he knew Wolden was working as an informant for the local narcotics task force. A police officer confirmed that Russell Wolden was an informant who worked for him during 1987.

One November evening, shortly after David Costa arrived home from work, Wolden rang his doorbell. He introduced the person with him as Danny Payne. Wolden said he needed appellant's help badly, and alluded to the police officer for whom he was working. Wolden showed appellant a piece of paper and told him it was a process for manufacturing methamphetamine. Wolden said he was having problems, and began asking appellant questions about the symbols in the recipe. Wolden told appellant they had in his car some glassware and some "mess" they had come up with using this formula.

Appellant wrote things on the recipe as Wolden was talking. He also consulted his chemical reference books because he was not familiar with the formula for making methamphetamine. Deanna Costa had already gone to bed and was not involved in the discussions.

After writing on the formula, appellant had a discussion alone with Wolden. Wolden told appellant he "was having a problem . . . with some people that he was dealing with and that he needed to establish some kind of credibility with them." He intended to do something like what was on the formula on the paper. Appellant assumed that he was going to make methamphetamine. Wolden appeared scared of Payne. At one point, he began crying. In David Costa's presence, Payne accused Wolden of working for the police. Wolden denied this accusation and their discussion "got pretty hot and heavy." Wolden said he would prove he was not working for the police. He brought some files in from his car to show Payne he had "fought" every one of his criminal cases.

Wolden asked appellant for permission to use his garage. Appellant gave his permission, assuming Wolden's purpose was to perform experiments having something to do with methamphetamine.

After getting up the next morning, appellant got a call from Wolden. Wolden asked about Payne, and said he had left him at the house. Appellant found Payne asleep in an abandoned van in the back of his house. He called Wolden back and asked him to pick Payne up. As appellant was leaving for work he saw Wolden and Payne get into Wolden's car and leave his house.

When Deanna Costa did not call him at work all day, appellant became worried. His brother called and told him the police were at his house, but that no one was home. He reached Wolden by phone, and Wolden told him Payne had *not* left the house that morning.

Around midnight, Wolden called appellant and told him Deanna Costa was not "in the best of shape, but she was safe, and that he was on his way to get her." He went to Wolden's house and Deanna Costa was there. She looked "terrible." She was battered, her eyes were red, her feet were bleeding and she was in hysterics. Wolden's girlfriend testified at trial that Payne had raped Deanna Costa.

David Costa testified that he gave Wolden permission to use his garage for the purpose of making a controlled substance only after he was assured by Wolden he would not "do anything of an illegal nature." He did not consider that Wolden might be doing something illegal because Wolden was a police informant. Had Wolden not been a police informant, appellant never would have talked to him about manufacturing methamphetamine.

Section 11367 provides "All duly authorized peace officers, while investigating violations of this division in performance of their official duties, and any person working under their immediate direction, supervision or instruction, are immune from prosecution under this division." Appellants contend the trial court had a sua sponte duty to advise the jury that police agents are immune from narcotics prosecutions, and that if appellants reasonably believed they were helping an agent of the police, they could not be found guilty. They characterize this as a reasonable mistake of fact defense.[3]

■ The trial court must instruct sua sponte on "the general principles of law . . . relevant to the issues raised by the evidence." (*People* v. *Flannel* (1979) 25 Cal.3d 668, 680-681 [160 Cal.Rptr. 84, 603 P.2d 1].) The reasonable mistake of fact defense is described in CALJIC No. 4.35, which reads: "An act committed or an omission made in ignorance or by reason of a mistake of fact which disproves any criminal intent is not a crime. [¶] Thus a person is not guilty of a crime if he commits an act or omits to act under an honest [and reasonable] belief in the existence of certain facts and circumstances which, if true, would make such an act or omission lawful." (CALJIC No. 4.35 (5th ed. 1988).)

■ Appellant argues that the mistake of fact defense applies here because there was substantial evidence, based on his own testimony, that he

---

[3]This defense applies to both appellants, although David Costa dealt more directly with the "informant." The prosecutor's theory extended criminal liability to Deanna Costa, who did not testify, on the premise that she shared her husband's perceptions of the situation.

believed Russell Wolden was acting as an agent of the police when he discussed the manufacturing process with him and agreed to allow him to use his garage for his experiments. Because an aider and abettor's liability is vicarious, appellant argues, citing *People v. Croy* (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392], his culpability "necessarily depends on the commission of [the underlying crime] by the perpetrator." (*People v. Patterson* (1989) 209 Cal.App.3d 610, 614 [257 Cal.Rptr. 407].) Thus if a person reasonably, but mistakenly, believes the individual he is aiding is not committing a crime because of his status as an informant, he should be found not guilty. If appellant helped Wolden based on a reasonable, but mistaken, belief that Wolden was committing no crime because he was a police informant, he would be not guilty based on a mistake of fact.

The issue, then, is whether an honest and reasonable belief that the person one is aiding in the commission of an otherwise criminal act is immune from prosecution provides a defense for such aid. This defense consists of two mistakes, one of fact and one of law. Appellant's mistake of fact was believing that Wolden was acting as a police informant. Appellant's mistake of law was believing that the statutory grant of immunity provided for by section 11367 extended to those who assist the informant. Even if Wolden had been acting as an informant when he came to the Costa home, his assurances to David Costa that he was not going to do anything illegal did not make appellants' participation in the manufacturing of a controlled substance lawful.

■ As noted in *People v. O'Brien* (1892) 96 Cal. 171, 176 [31 P. 45], "It is an emphatic postulate of both civil and penal law that ignorance of a law is no excuse for a violation thereof. Of course it is based on a fiction, because no man can know all the law, but it is a maxim which the law itself does not permit anyone to gainsay. It is expected that the jury and the court, where it is shown that in fact the defendant was ignorant of the law, and innocent of any intention to violate the same, will give the defendant the benefit of the fact, and impose only a light penalty . . . . The rule rests on public necessity; the welfare of society and the safety of the state depend upon its enforcement."

■ Appellant's testimony reveals that he did intend to assist in the manufacturing of a controlled substance, but that he did not intend to break the law. Although we would expect this explanation, if believed, to influence a sentencing court, it is just that: an explanation rather that an excuse.

Appellant relies on *People v. Lucero* (1988) 203 Cal.App.3d 1011 [250 Cal.Rptr. 354] in which the defendant, who had been working as an informant for an officer, arranged a drug transaction for the jail. Although the

officer said he was not working with the defendant on that particular case, the defendant's testimony made it clear he believed he was arranging this transaction as part of his informant duties. The Court of Appeal held the trial court erred in refusing a mistake of fact defense instruction: "if appellant harbored a reasonable and good faith belief that his actions shielded him from prosecution pursuant to section 11367, such belief constituted a valid defense to the charge against him." (*Id.* at p. 1018.)

The defendant in *Lucero* mistakenly believed that he was in fact authorized by a police officer to arrange the transaction. His honest and reasonable belief in circumstances which, if true, would make him immune from prosecution, constituted an excusable mistake of fact. In contrast, appellant here believed that whatever immunity an informant had extended to him as well, which is an inexcusable mistake of law.

Because the mistake of fact defense has no application to the facts of this case, the trial court had no duty to instruct on it.

*Section II\**

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgments of conviction for violating Health and Safety Code section 11366.5, subdivision (a) (count II) are reversed. Judgment and sentence as to each appellant are vacated and the clerk of the superior court is directed to enter judgments of acquittal and amend the abstracts of judgment accordingly.

The judgment of conviction for violating Health and Safety Code section 11379.6 (count I) is affirmed.

Agliano, P. J., and Cottle, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 11, 1992.

---

\*See footnote *ante*, page 1201.