[No. F014804. Fifth Dist. June 30, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN NICHOLAS GLENOS, Defendant and Appellant.

**COUNSEL**

Richard G. Cenci and Gayle A. Guteknust for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Maureen A. Daly and Ward A. Campbell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEST, P. J.**—Defendant appeals from his convictions by a jury of manufacturing methamphetamine (Health & Saf. Code,[1] § 11379.6, subd. (a); count I) and making space available for manufacturing methamphetamine (§ 11366.5, subd. (a); count II.)

### STATEMENT OF FACTS

On the morning of August 5, 1988, Robert Smith purchased 400 pounds of freon in Fresno. Smith intended to use this freon to manufacture methamphetamine. After loading the freon into his pickup truck, Smith drove to the foothills above North Fork in Madera County. Unbeknownst to Smith, he was being watched by Bureau of Narcotics Enforcement agents.

Smith's destination was defendant's property located at 777 Kinsman Flat. Defendant, who operated a backhoe service, lived on this property.

When Smith arrived on defendant's property, he was met by his manufacturing partner, Joe Medeiros. The other equipment necessary for the methamphetamine manufacturing, including a portable generator, was already at the site. Smith had dropped off his trailer containing this equipment a day or two before.

After the equipment had been set up, but before the "cooking" had begun, Smith saw someone he knew as "John" drive in with a backhoe and drop the backhoe off. John talked to Medeiros, worked on his backhoe, and then left about an hour later. During this time, Smith kept out of sight. John did not return while Smith was at the property. Smith identified John as defendant.

Smith and Medeiros finished manufacturing the methamphetamine on Sunday, August 7. They had made six pounds of methamphetamine and divided it up, each taking three pounds. Smith also packed up most of the manufacturing equipment before leaving. Smith and Medeiros returned the next day, Monday, and picked up Smith's trailer. However, they intentionally left behind a "chunk" of methamphetamine on a plate in defendant's house. They also left the portable generator behind. According to Smith, Medeiros was talking about trying to use the place again.

A few weeks earlier, Smith had given Medeiros $2,500 in cash. This money was bound with a rubber band and inside a Ziploc bag. The money was to be used to pay for Smith's share of the cost of the place to manufacture.

---

[1] All statutory references are to the Health and Safety Code unless otherwise indicated.

On August 9, defendant's property was searched pursuant to a warrant. The officers found what they characterized as the remnants of a methamphetamine lab. Five thousand dollars cash packaged in Ziploc bags was found in defendant's safe.

Defendant testified he left his residence in the morning on August 5, spent the weekend in the Bay Area with friends, and did not return until after the search. Defendant stated he was acquainted with Medeiros and had done some work for him but denied being involved with the methamphetamine manufacturing.

## DISCUSSION

I. *Whether the search warrant was supported by probable cause.*

■ Defendant contends the trial court improperly denied his suppression motion (Pen. Code, § 1538.5) which was premised on the alleged insufficiency of the search warrant affidavit. Defendant argues the fact that Smith bought freon and took it to defendant's property does not support a finding of probable cause.

■ A warrant must be upheld if it meets the totality-of-the-circumstances test of *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317]. (*People* v. *Mayer* (1987) 188 Cal.App.3d 1101, 1116 [233 Cal.Rptr. 832].) Under that analysis, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 238-239 [76 L.Ed.2d at pp. 548-549].) Probable cause, as the term implies, deals only with " 'the probability, and not a prima facie showing, of criminal activity . . . .' [Citations.]" (*Id.* at p. 235 [76 L.Ed.2d at p. 546].) Thus, under this standard, innocent behavior will often provide the basis for a showing of probable cause, which result is "perfectly reasonable." Consequently, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." (*Id.* at p. 244, fn. 13 [76 L.Ed.2d at p. 552].)

■ The appellate court must give great deference to the magistrate's finding of probable cause. (*People* v. *Aho* (1985) 166 Cal.App.3d 984, 991

[212 Cal.Rptr. 686].) "The warrant is properly set aside only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause." (*People* v. *Levine* (1984) 152 Cal.App.3d 1058, 1063 [199 Cal.Rptr. 756].)

Here, the affidavit set forth background information on the affiant's training in the area of clandestine laboratory investigations. The affidavit then explained how freon is used in the methamphetamine manufacturing process, noting that freon has become popular because there are no strong odors associated with it, unlike ether which it replaces. The affiant stated he was aware that freon has application in the refrigeration machinery industry as a solvent but that such an application would usually not exceed three to five pounds unless industrial size equipment were involved. However, it takes approximately 30 pounds of freon to manufacture 1 pound of methamphetamine.

The affidavit then set forth the details of the agents' surveillance beginning with Smith's purchase of 400 pounds of freon and ending with Smith's arrival at defendant's property. Smith made the purchase under a false name and had purchased a total of 2,430 pounds of freon in the past 15 months. Smith had given inconsistent reasons for his use of this freon. The affidavit also noted that the only source of power at defendant's residence was a generator and that "remoteness in manufacturing methamphetamine is commonly used."

Defendant contends Smith's purchase of 400 pounds of freon, which is not a controlled substance, and his drive to a remote neighborhood in the foothills with this freon is not sufficient to support the issuance of a search warrant. However, the fact that particular conduct may be innocent is not the relevant inquiry. Rather, the court must look to " 'the degree of suspicion that attaches to particular types of noncriminal acts.' " (*People* v. *Spears* (1991) 228 Cal.App.3d 1, 19 [278 Cal.Rptr. 506].) Further, as noted above, a finding of probable cause requires only a fair probability that contraband or evidence of criminal activity will be found. (*Illinois* v. *Gates*, *supra*, 462 U.S. at pp. 238-239 [76 L.Ed.2d at pp. 548-549].)

Despite freon not being a controlled substance, it is unlikely an individual would have a legitimate use for the quantity of freon Smith transported to defendant's property. This large quantity of freon purchased under a false name, in conjunction with the remoteness of defendant's property, and the magnitude of Smith's prior purchases of freon, supplied a degree of suspicion sufficient to support a finding that it was fairly probable evidence of methamphetamine manufacturing would be found. Thus, there

was a substantial basis for the magistrate's conclusion that probable cause existed.

## II. *Whether the evidence is sufficient to support defendant's conviction for manufacturing methamphetamine.*

Defendant was convicted of manufacturing methamphetamine (§ 11379.6, subd. (a)) as an aider and abettor. Section 11379.6, subdivision (a) provides:

"Except as otherwise provided by law, every person who manufactures, compounds, converts, produces, derives, processes, or prepares, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, any controlled substance . . . shall be punished . . . ."

There was no evidence presented that defendant was directly involved in the manufacturing. ▇▇ Defendant argues a conviction of section 11379.6 as an aider and abettor renders that section unconstitutionally vague because a plain reading of section 11379.6 fails to give notice that renting space to a manufacturer is "manufacturing." ▇▇ Defendant further contends if renting space to a manufacturer is equivalent to manufacturing, section 11366.5 is meaningless because it could never be a separate offense.

▇▇ For a defendant to be convicted as an aider and abettor there must be proof the defendant acted with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense. (*People v. Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60,, 674 P.2d 1318].) Whether a defendant aided and abetted a crime is a question of fact. Consequently, on appeal, all conflicts in the evidence and reasonable inferences must be resolved in favor of the judgment. (*People v. Mitchell* (1986) 183 Cal.App.3d 325, 329 [228 Cal.Rptr. 286].)

▇▇ Here, by making the space available for the manufacturing, defendant facilitated the commission of the crime. Smith testified defendant arrived with his backhoe on August 5 in the late afternoon and spoke with Medeiros. Smith also testified Medeiros told him they had to pay $5,000 "to use the place to cook at" and he gave Medeiros $2,500 as his "50 percent" of the cost of renting the space to manufacture. Five thousand dollars in cash was found in defendant's safe. Further, Smith had left his trailer on defendant's property several days before August 5 and Medeiros had a key to unlock defendant's gate. Finally, Smith and Medeiros left their generator and some methamphetamine behind, indicating they had no intent to conceal their activities from defendant. Resolving all inferences in favor of the judgment,

these facts support the finding that defendant knowingly permitted the manufacturing to take place on his property. The evidence is sufficient to uphold the manufacturing conviction.

Further, a conviction as an aider and abettor does not render section 11379.6, subdivision (a), vague for failure to give notice that one can be convicted for aiding and abetting in the manufacturing of a controlled substance. Penal Code section 31 provides such notice. Section 31 defines a principal in a crime as including all persons who "aid and abet in its commission."

Finally, section 11366.5, subdivision (a), does not preclude a conviction for aiding and abetting the manufacture of a controlled substance under section 11379.6, subdivision (a). The general rule is that where a specific or special statute covers much of the same ground as a more general statute so that a violation of the specific statute will necessarily result in a violation of the more general statute, prosecution under the general statute will be precluded. (*People* v. *Jenkins* (1980) 28 Cal.3d 494, 505 [170 Cal.Rptr. 1, 620 P.2d 587]; see also *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].) It is only when each element of the "general" statute corresponds to an element on the face of the "special" statute or when it appears from the context a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute, that a prosecution under the "general" statute is precluded. Moreover, as the *Jenkins* court noted, the rule is "designed to ascertain and carry out legislative intent." (28 Cal.3d at p. 505.) Where it is evident the Legislature did not intend to preclude application of the general statute, the rule does not apply.

In this case, although there is some overlap, the two statutes in question define different crimes enacted with distinct legislative intents and purposes. Section 11379.6, subdivision (a), proscribes the manufacturing of any of the specified controlled substances. In contrast, section 11366.5, subdivision (a), is violated by knowingly making space available for the purpose of unlawfully manufacturing, storing or distributing any controlled substance *for sale or distribution*. Thus, aiding and abetting the manufacture of a controlled substance for personal use would violate section 11379.6, subdivision (a) but not section 11366.5, subdivision (a). Further, violating section 11366.5, subdivision (a) by making space available for the storage or distribution of a controlled substance for purpose of sale or distribution would not constitute aiding and abetting the manufacture of a controlled substance. In *People* v. *Costa* (1991) 1 Cal.App.4th 1201 [2 Cal.Rptr.2d 720], the Sixth District, after careful review of the legislative history and the Legislature's intent in enacting section 11366.5, noted:

"The history of this section reveals that the intent of the Legislature was that the phrase 'for sale or distribution' apply to the manufacturing of controlled substances. Assembly Bill No. 1917 was originally introduced on March 30, 1981, with the stated goal of adding sections 11366.5 and 11366.7 to the Health and Safety Code. The stated purpose of the bill was to reach owners or managers of property and retailers or wholesalers of chemicals for their illegal activities. In both sections, the Legislature wanted to reach people who aided those engaged in manufacturing controlled substances for sale or distribution to others. This phrase was made an integral part of both sections.

"Versions of Assembly Bill No. 1917 show that the expressed intent in enacting section 11366.5 was to reach the manufacturing, storing, and distributing of controlled substances undertaken for the purpose of sale or distribution to others. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . The Legislature sought to reach landlords and others who knowingly allowed the manufacturing of storage of controlled substances for sale or distribution to other persons to take place on premises they owned or managed." (1 Cal.App.4th at pp. 1206-1207.)

Accordingly, in the present case, even assuming that section 11379.6, subdivision (a), is a general statute and section 11366.5, subdivision (a), a special statute relating to the manufacture of controlled substances, the general rule would be inapplicable and not preclude defendant's prosecution and conviction of aiding and abetting the manufacture of methamphetamine in violation of section 11379.6 as charged in count I.

III. *Whether sufficient evidence supports defendant's conviction of making space available for the manufacture of methamphetamine.*

Section 11366.5, subdivision (a), provides:

"Any person who has under his or her management or control any building, room, space, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, who knowingly rents, leases, or makes available for use, with or without compensation, the building, room, space, or enclosure for the purpose of unlawfully manufacturing, storing, or distributing any controlled substance for sale or distribution shall be punished by imprisonment in the county jail for not more than one year, or in the state prison."

Omitting surplusage, "[a]ny person . . . who knowingly . . . makes available for use . . . the building . . . or enclosure for the purpose of

unlawfully manufacturing . . . any controlled substance for sale or distribution . . ." violates section 11366.5, subdivision (a). *People* v. *Costa*, *supra*, concluded, correctly in our view, "A prosecution under section 11366.5, subdivision (a) thus requires proof that the manufacturing which the owner or manager allowed was for the purpose of sale or distribution to others." (1 Cal.App.4th at p. 1207.) While the court in *Costa* did not expressly address the question of whether the prosecution must prove the owner's knowledge that the manufacturing was for purpose of sale or distribution, such is implicit in the holding and required by the express terms of the statute.

As defendant has correctly pointed out, the trial court did not instruct the jury that the unlawfully manufactured, stored or distributed drugs must be shown to be for sale or distribution. Defendant argues this omission constitutes reversible error.

In *People* v. *Costa*, *supra*, the trial court instructed the jury that the prosecution had to prove only two elements under section 11366.5, subdivision (a): (1) that a person knowingly permitted a controlled substance to be manufactured or stored; (2) in a building under his or her management or control. (1 Cal.App.4th at p. 1205.) The appellate court concluded the language of this section requires proof that the manufacturing which is unlawfully permitted be for the purpose of sale or distribution to others. (*Id.* at p. 1207.) Here, as in *Costa*, the jury was not instructed on an element of the offense.

Defendant contends the trial court's failure to instruct the jury that the controlled substance must be manufactured for sale or distribution requires reversal, since, according to defendant, the prosecution presented no evidence the drugs manufactured on defendant's property were going to be used for sale or distribution.

 "When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People* v. *Green* (1980) 27 Cal.3d 1, 55 [164 Cal.Rptr. 1, 609 P.2d 468].) The test on appeal is not whether evidence proves guilt beyond a reasonable doubt but, rather, whether substantial evidence supports the conclusion of the trier of fact. (*People* v. *Reyes* (1974) 12 Cal.3d 486, 497 [116 Cal.Rptr. 217, 526 P.2d 225].) "If the findings are reasonable and supported by the evidence, reversal is not warranted because a contrary finding might also be reasonable." (*People* v. *Rushing* (1989) 209 Cal.App.3d 618, 621 [257 Cal.Rptr. 286].)

In *People* v. *Costa, supra,* the court applied the following standard for determining prejudice: " 'the test for prejudice resulting from instructional error, at least regarding elements of the offense, is now whether the evidence eliminates any reasonable doubt that a defendant would have been convicted under proper instructions.' " (1 Cal.App.4th at p. 1208.) In *Costa,* there was no evidence suggesting that the manufacturers intended to sell or distribute the amphetamine. Thus, the court found the error was prejudicial. (*Ibid.*)

In contrast here, while there was evidence of an intent on the part of the manufacturers to sell or distribute the methamphetamine, there was a complete absence of evidence of any knowledge on the part of defendant that the controlled substance was being manufactured for purpose of sale or distribution to others. Smith testified he and Medeiros manufactured six pounds of methamphetamine on defendant's property. Smith also testified he was not using methamphetamine on a daily basis at that time. Although Smith had taken three pounds of methamphetamine with him when he left defendant's property, the police seized only one and one-half pounds from Smith's residence a few days later, on August 9. However, the police also seized over $14,000 in cash.

The large quantity of methamphetamine manufactured, the absence of half of Smith's share a few days later, and the presence of over $14,000 in cash, together constitute substantial evidence the manufacturers intended to sell or distribute the methamphetamine. However, there was no evidence defendant had knowledge of all or any of these facts. Nor was there any other evidence presented from which the jury could have found defendant knew, or reasonably should have known, the methamphetamine was to be manufactured, or was being manufactured, for purpose of sale or distribution.

Accordingly, we hold not only that the trial court erred in failing to instruct the jury with reference to an element of the offense but that, on the evidence presented, defendant could not have been convicted of a violation of section 11366.5, subdivision (a) under proper instructions. It follows that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." (*Burks* v. *United States* (1978) 437 U.S. 1, 11 [57 L.Ed.2d 1, 9-10, 98 S.Ct. 2141]; *People* v. *Costa, supra,* 1 Cal.App.4th at p. 1208.) Defendant's conviction for violating section 11366.5, subdivision (a) must be reversed and retrial is barred.

### DISPOSITION

The judgment of conviction for violation of section 11366.5, subdivision (a) (count II) is reversed and the sentence on that count vacated.

The judgment is affirmed in all other respects.

The superior court is directed to cause an amended abstract of judgment to be prepared and certified copies forwarded to the appropriate authorities.

Stone (W. A.), J., and Ardaiz, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 23, 1992.