[No. F019540. Fifth Dist. Aug. 18, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
ENRIQUE DIAZ SANCHEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through V.

**COUNSEL**

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi and Alison Elle Smith, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE (W. A.), J.**—A jury found appellant, Enrique Diaz Sanchez, guilty of aiding and abetting the manufacture of methamphetamine in violation of Health and Safety Code[1] section 11379.6 because he permitted his ranch to be used as the location for a methamphetamine laboratory. In addition, the jury found true the 10-year enhancement allegation that the amount of methamphetamine exceeded 10 pounds (§ 11379.8). The court sentenced appellant to the midterm of five years, struck the enhancement pursuant to Penal Code section 1170.1, subdivision (h) and ordered a restitution fine of $1,000. (Gov. Code, § 13967, subd. (a).)

Following our recitation of the facts, we address five issues appellant now raises.

### THE FACTS

On August 12, 1992, a detective from the Tulare County Sheriff's Department investigated a suspected chemical dump site near a canal in a remote area of Tulare County. He found remnants of ingredients and paraphernalia commonly used to manufacture methamphetamine. The detective left the dump site undisturbed. For several weeks officers checked the area periodically hoping to find evidence that would lead them to the laboratory operators.

Approximately three-quarters of a mile from the dump site down a dirt road between a cornfield and a hayfield was an isolated house. On September 25, 1992, at approximately 10:40 p.m. a team of investigators went to the residence in search of the methamphetamine laboratory. Two vans were parked in front of the residence between the garage and the house. When the officers exited their vehicles, they immediately observed equipment used to manufacture methamphetamine: a number of 5-gallon white buckets, vacuum pumps, vacuum flasks, freon (11 cans) and one 55-gallon drum. The laboratory operators apparently fled into the surrounding fields when they observed sheriff's vehicles entering the property.

Appellant, a farm laborer, lived in the house with his wife and daughter. His employer owned the house and allowed appellant to use it rent free.

---

[1]All further statutory references are to the Health and Safety Code unless otherwise indicated.

Appellant and his wife came out of the house in response to the commotion. She was in a nightgown and he was in Levi's with no shirt or shoes. They immediately were arrested and advised of their rights. Appellant agreed to talk and gave verbal and written permission for his house and all cars to be searched.

A search of the house disclosed $4,901.00 in a black purse in appellant's bedroom. The door between the laundry room and the kitchen was covered with duct tape to prevent odor and gases from permeating the entire house. Thirty-three pounds of methamphetamine with a street value of approximately $200,000 were found outside on a table.

Appellant told Special Agent Rodriguez that his uncle, Fermin Sanchez, had brought four Mexican men to the house to make arrangements for them to "work these chemicals." Appellant gave Rodriguez the first names, nicknames and descriptions of the men. One of the men, "Chaco," contacted him several days later to ask if he would allow them to work at the ranch. Appellant asked for more time to think about it. He called Chaco on or about September 23d and told him they could "do whatever they were going to do with these chemicals." They told him they were processing agricultural chemicals and they needed to use his place because it was illegal to "cook" the chemicals in the city because of the smoke. They offered him $1,500, but he wasn't paid because they didn't finish the process. He described the men mixing and pouring the chemicals from one bucket into another through a sheet or T-shirt. He said they worked from six o'clock in the evening until two or three o'clock in the morning. He indicated no familiarity with the words "methamphetamine," "meth," "crack," "crank," or "cranque." He showed some knowledge of the word "crystal."

The next day, Special Agent Rodriguez interviewed appellant's uncle, Fermin Sanchez. He became convinced after speaking with the uncle that appellant was not being truthful. In a second interview, appellant admitted he lied about his uncle's involvement and said he used his uncle's name because he knew his uncle had been investigated and arrested for operating a methamphetamine lab in July of 1992. Instead, a man named Marcos had brought the men to his house. The same men had used Marcos's house for a methamphetamine lab. Appellant was reluctant to talk when Rodriguez asked if the men had used his place on a previous occasion. However, at trial he admitted they previously had used the ranch.

DISCUSSION

I

*Section 11366.5 Does Not Preclude Conviction Under Section 11379.6*

Section 11379.6, of which appellant was convicted, provides in subdivision (a): "Except as otherwise provided by law, every person who manufactures, compounds, converts, produces, derives, processes, or prepares, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, any controlled substance specified in Section 11054, 11055, 11056, 11057, or 11058 shall be punished by imprisonment in the state prison for three, five, or seven years and by a fine not exceeding fifty thousand dollars ($50,000)."

Section 11366.5, subdivision (a) provides: "Any person who has under his or her management or control any building, room, space, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, who knowingly rents, leases, or makes available for use, with or without compensation, the building, room, space, or enclosure for the purpose of unlawfully manufacturing, storing, or distributing any controlled substance for sale or distribution shall be punished by imprisonment in the county jail for not more than one year, or in the state prison."

■■■ Appellant contends under the circumstances of his case, section 11366.5 precludes his conviction for aiding and abetting the manufacture of a controlled substance under section 11379.6. He cites the general rule that when a specific or special statute covers much of the same subject as a more general statute so that the violation of the specific statute will necessarily result in the violation of the more general statute, prosecution under the general statute is precluded. (*People* v. *Jenkins* (1980) 28 Cal.3d 494, 505 [170 Cal.Rptr. 1, 620 P.2d 587]; see also *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].)

■■ The rule that a special statute supersedes a general statute applies "only when *each element* of the 'general' statute corresponds to an element on the face of the 'special' statute or when it appears from the context a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute . . . ." (*People* v. *Glenos* (1992) 7 Cal.App.4th 1201, 1209 [10 Cal.Rptr.2d 363], italics added.) Moreover, it

must be evident the Legislature intended to preclude application of the general statute to the targeted conduct. (*People* v. *Jenkins*, *supra*, 28 Cal.3d at p. 505; *People* v. *Glenos*, *supra*, 7 Cal.App.4th at p. 1210.) The general rule upon which appellant relies does not apply here.

First, the elements of the statutes do not correspond. To convict under section 11366.5 the prosecution must prove: (1) the accused knowingly permitted a controlled substance to be manufactured or stored; (2) for the purpose of sale or distribution to others; (3) in a building under his or her management or control. (*People* v. *Glenos*, *supra*, 7 Cal.App.4th at pp. 1210-1211; *People* v. *Costa* (1991) 1 Cal.App.4th 1201, 1207 [2 Cal.Rptr.2d 720].) For a person to be convicted as an aider and abettor to a violation of section 11379.6 the prosecution must prove: (1) the accused had knowledge of the unlawful purpose of the perpetrator to manufacture a controlled substance, (2) the accused had the intent or purpose of committing, engaging, or facilitating the manufacture of a controlled substance, (3) the accused, by act or advice, aids, promotes, encourages or instigates the manufacture of a controlled substance. (See *People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318].)

A simple comparison reveals section 11366.5 requires that the accused have *knowledge that the substance is being manufactured or stored for the purpose of sale or distribution to others*, whereas section 11379.6 requires no such knowledge. Aider and abettor liability under section 11379.6 requires that the accused have the *specific intent to facilitate the manufacturing process*, whereas section 11366.5 on its face requires no such intent.

Finally, nothing in the legislative history of these statutes indicates the Legislature intended to preclude prosecution for a violation of section 11379.6 in circumstances when it is possible to prove an accused permitted the use of his or her property as a laboratory for the manufacture of a controlled substance and possessed the specific intent to facilitate or aid the manufacturing process.

Although the offenses are closely related, a violation of section 11366.5 does not necessarily or even commonly result in a violation of section 11379.6. Section 11366.5 does not preclude a conviction for a violation of section 11379.6.

II-V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The superior court is directed to modify the judgment to reflect a restitution fine in the amount of $200 and to forward a modified abstract of judgment to the Department of Corrections. In all other respects the judgment is affirmed.

Ardiaz, Acting P. J., and Thaxter, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 16, 1994.

---

*See footnote, *ante*, page 918.