[No. H014344. Sixth Dist. Feb. 26, 1996.]

FENWICK & WEST et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

McManis, Faulkner & Morgan, Michael Reedy, James McManis and Alan M. Lagod for Petitioners.

No appearance for Respondent.

George Kennedy, District Attorney, and Frank Dudley Berry, Jr., Deputy District Attorney, for Real Party in Interest.

OPINION

**ELIA, Acting P. J.**—In this proceeding, petitioners Fenwick & West (Fenwick) and Stanley Chao seek a writ of mandate following the denial of their request for return of property seized from their law offices during a criminal investigation of their client. Petitioners contend: (1) the affidavits on which the search warrants were based were not supported by probable cause; and (2) the search warrants were overbroad. We agree with petitioners' first contention and grant the requested relief.

*Background*

On July 6, 1995, representatives of the Santa Clara County District Attorney served a search warrant at Qualop Systems, Inc. (Qualop), in the course of an investigation into suspected trade secret theft and sale of stolen technology to China and Taiwan. The alleged victim of the theft is Harmonic Lightwaves (Harmonic). The principal suspects are Abraham Jou, president of Qualop; Ching Ho, an officer; and Chien-Yu Kuo, an officer of Qualop and full-time employee of Harmonic. While at Qualop, investigators found records identifying Kuo as one of the founders of Optisys Corporation, a company which apparently had been acquired by Qualop and was its predecessor in interest.

Qualop immediately contacted petitioner Fenwick, a law firm, for representation. Fenwick sent Attorney Michael Patrick and others to represent Qualop in connection with the search.

Upon his arrival Patrick identified himself to investigators as counsel for Qualop. This introduction formed the basis of a second warrant on the offices of Fenwick. In his supporting affidavit, the investigator, John C. Smith, incorporated by reference the affidavit for the search of Qualop. Smith stated that when he executed the search warrant for the Qualop premises he found numerous items of technological data belonging to Harmonic, including schematics and computer files. A preliminary review of this material indicated to Smith that the suspects had committed theft of Harmonic's trade secrets in violation of Penal Code section 499c.

Smith's request to search the Fenwick offices was supported by the following statement: "Based on my training and experience, and my common knowledge, violations of Penal C. § 641.3 (Commercial bribery) are often committed simultaneously with trade secret theft by employees of the victim corporation. I am also aware that ownership of stock or other equity rights in a start-up corporation is an [sic] valuable form of compensation. Finally, I am aware that corporate counsel usually have records and documents prepared in connection with such issuances, and stock ledgers and records documenting the ownership of stock equity rights in corporations they represent. On this basis, I am of the belief that records concerning the ownership of stock and equity of shareholders of Qualop Corporation [sic], and that such documentation will contain records of equity ownership by CHIEN-YU KUO." Because the search warrant was to be directed at a lawyer's office, the investigator requested appointment of a special master pursuant to Penal Code section 1524, subdivisions (c) and (d).

A magistrate issued a warrant to search the Fenwick offices and seize documents of four types: (1) all records of Qualop's stock or security issuances or business plans; (2) all records of technology transfers to Qualop, such as sales, assignments of copyright or patent rights, or royalty agreements; (3) all contracts, agreements, or memoranda of understanding between Qualop and any consultant, employee, agent, officer, director, or affiliate; and (4) all minutes of Qualop's director and shareholder meetings.

While executing the Fenwick warrant on July 13, 1995, investigator Mark Hatcher learned that Fenwick was not general counsel for Qualop, but only special counsel on some patent matters. The next day the district attorney asked the Department of Corporations to search its files for filings by Qualop. The search revealed that in April 1995 Attorney Stanley Chao had made an exemption filing pursuant to Corporations Code section 25102, subdivision (f). During the Qualop search Hatcher had seen documents naming Chao as attorney for Qualop's predecessor, Optisys. Hatcher had previously assumed that Fenwick had replaced Chao as corporate counsel

when Optisys was acquired by Qualop, but "[b]ased on the Department of Corporations records," he was "now of the opinion" that Chao had continued as counsel for the newly formed Qualop.

Based on Hatcher's affidavit, the magistrate issued another warrant authorizing seizure of the same records sought at Fenwick, along with two new categories: all records pertaining to the reorganization of Optisys into Qualop and all financial records pertaining to Qualop.

The searches of both the Fenwick and Chao offices were undertaken by a special master following the procedure outlined in Penal Code section 1524, subdivision (c). Pursuant to subdivision (c)(2) of this section, the special master sealed the documents taken in the two searches. Petitioners then moved for suppression of the evidence and return of their property, arguing that there was no probable cause to seize these documents and that the warrants were overbroad.

The trial court denied the motions, but stayed its order to enable petitioners to seek appellate review. On August 18, 1995, this court issued an order directing the trial court not to release the documents to the district attorney pending further review of the petition.

*Discussion*

1. *Standard of Review*

Petitioners and the People at the outset debate the applicable standard of review. The People contend that the magistrate's determination of probable cause must be given "great deference" by a reviewing court. Petitioners respond that the People are relying on a federal standard, which is not followed by California courts. Instead, they argue, the determination of probable cause is a question of law subject to de novo review.

It is true that the courts of this state have not uniformly adopted the deferential standard in reviewing determinations of probable cause to support search warrants. (See, e.g., *People* v. *Hepner* (1994) 21 Cal.App.4th 761, 775 [26 Cal.Rptr.2d 417] [independent review], citing *People* v. *Camarella* (1991) 54 Cal.3d 592, 601 [286 Cal.Rptr. 780, 818 P.2d 63].) Nevertheless, a vast majority of appellate courts have adhered to the standard articulated in *Illinois* v. *Gates* (1983) 462 U.S. 213, 236 [76 L.Ed.2d 527, 547, 103 S.Ct. 2317]: "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' " Thus, ". . . the duty of a reviewing court is simply to ensure

that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." (*Id.* at pp. 238-239 [76 L.Ed.2d at p. 548]; *Massachusetts* v. *Upton* (1984) 466 U.S. 727, 728 [80 L.Ed.2d 721, 724, 104 S.Ct. 2085].)

Most appellate courts of this state, including this district, have followed the federal approach. (See, e.g., *People* v. *Spears* (1991) 228 Cal.App.3d 1, 17 [278 Cal.Rptr. 506]; *People* v. *McDaniels* (1994) 21 Cal.App.4th 1560, 1564 [27 Cal.Rptr.2d 245]; *People* v. *Glenos* (1992) 7 Cal.App.4th 1201, 1206 [10 Cal.Rptr.2d 363].) Accordingly, the magistrate's determination will not be overturned unless the supporting affidavit fails as a matter of law to support the finding of probable cause. (*People* v. *Hobbs* (1994) 7 Cal.4th 948, 975 [30 Cal.Rptr.2d 651, 873 P.2d 1246]; *People* v. *McDaniels, supra,* 21 Cal.App.4th at p. 1564; *People* v. *Glenos, supra,* 7 Cal.App.4th at p. 1207.) Doubtful or marginal cases are resolved in favor of upholding the warrant. (*United States* v. *Ventresca* (1965) 380 U.S. 102, 109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741]; *People* v. *Tuadles* (1992) 7 Cal.App.4th 1777, 1784 [9 Cal.Rptr.2d 780].) The burden is on petitioners to establish invalidity of these search warrants. (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 101 [104 Cal.Rptr. 226, 501 P.2d 234].)

As we will explain, however, even under the traditional deferential standard of review the magistrate's determination in this case cannot stand.

### 2. *Probable Cause to Search Fenwick Offices*

■ In determining whether an affidavit is supported by probable cause, the magistrate must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 238 [76 L.Ed.2d at p. 548].) The sufficiency of the affidavit must be evaluated in light of the totality of the circumstances. (*Ibid.*)

Petitioners challenge the basis of the search of Qualop as well as the search of Fenwick. For purposes of this proceeding, however, we will assume the Qualop search was proper, and confine our inquiry to whether there was probable cause to believe evidence of the suspected crimes could be found at Fenwick's offices.

Probable cause must attach to each place to be searched. (*People* v. *Easley* (1983) 34 Cal.3d 858, 870 [196 Cal.Rptr. 309, 671 P.2d 813]; *U.S.* v. *Hove* (9th Cir. 1988) 848 F.2d 137, 140.) Thus, an affidavit for a search warrant

must contain facts demonstrating a substantial probability that evidence of a crime will be located in a particular place. (*People* v. *Freeman* (1990) 219 Cal.App.3d 894, 904 [268 Cal.Rptr. 603]; *People* v. *McDaniels, supra,* 21 Cal.App.4th at p. 1564.) A statement that the affiant " 'has cause to suspect and does believe' " that the evidence is located at the targeted premises is insufficient. (*Illinois* v. *Gates, supra,* 462 U.S. at p. 239 [76 L.Ed.2d at p. 548].) ■ A lawyer's office may be searched for evidence of a client's crime, but special care must be taken to avoid unnecessary intrusion on attorney-client communications. (*Andresen* v. *Maryland* (1976) 427 U.S. 463, 482, fn. 11 [49 L.Ed.2d 627, 643, 96 S.Ct. 2737]; *U.S.* v. *Mittelman* (9th Cir. 1993) 999 F.2d 440, 445.)

■ The sole fact on which the People link Qualop's suspected crimes to Fenwick is Michael Patrick's statement upon his arrival at Qualop during the search, that he represented the corporation. The People suggest that the investigating officer and magistrate were "fully entitled to infer that 'counsel for the corporation,' the phrase by which the Fenwick personnel described themselves, meant precisely that, counsel for all purposes." They further insist that it was proper to infer a "common practice" for corporate lawyers to keep records of "significant corporate transactions" by their clients. But here there was no factual basis for assuming Fenwick served as Qualop's corporate counsel. No evidence exists that Patrick used the phrase "counsel for the corporation" in introducing himself to the investigators; this was the description of Patrick provided by John Smith in his affidavit. Patrick did not identify the nature of his representation; he did not state he was general counsel, corporate counsel, or, for that matter, legal counsel in any specific capacity.

Thus, while we agree that corporate counsel is likely to retain client records of the nature sought by the district attorney, the underlying premise—that it was proper to infer that Fenwick was Qualop's corporate counsel—is unsound. Accordingly, there was insufficient basis on which to conclude that there was a fair or substantial probability that the corporate materials requested would be located in the Fenwick offices.

## 3. *Search of Chao Offices*

■ The affidavit supporting the search of Chao's offices is similarly lacking in probable cause. Hatcher's affidavit related his discovery that Fenwick was not general counsel to Qualop, despite the appearance of its attorneys during the Qualop search. Hatcher based his assumption that Chao was corporate counsel for Qualop on the Department of Corporations records, which revealed that Chao had filed an exemption for Qualop

pursuant to Corporations Code section 25102, subdivision (f). He also noted that during the Qualop search, he had "come across" Chao's name as attorney for Optisys. The People point out that the Fenwick affidavit was incorporated by reference in Hatcher's request; thus, the magistrate also received averments of Chien-Yu Kuo's participation in founding Optisys and Qualop's acquisition of Optisys as well as Chao's previous "involvement" with Optisys.

According to the People, these facts show that Chao "performed significant legal services for Qualop, and retained records of significant probative value therefore existed [*sic*] on the same basis as did that for the Fenwick warrant." To the extent that this statement advocates an inference of probable cause to search Chao's offices, we disagree. The records sought from Chao were detailed and comprehensive; they included stock ledgers, bills of sale, consultant contracts, minutes of shareholder meetings, and all its financial records. While it may not be unreasonable to surmise that general counsel for a corporation would be in possession of such materials, the facts offered in the affidavit do not permit the assumption that Chao was general counsel for Qualop. Beyond the evidence of Qualop's criminal activity, the magistrate learned only that Chao had previously represented Qualop's predecessor in some unknown capacity on an unspecified number of occasions, and that Chao had assisted Qualop with a single exemption filing. Neither of these limited functions establishes an intimate familiarity with Qualop's internal operations or its dealings with outside entities. We therefore conclude the affidavit failed to establish probable cause to support this broad search of Chao's offices.

Because probable cause was lacking in the affidavits supporting the office searches of both petitioners, the August 7, 1995, order of the superior court must be vacated. Although the People incorporate by reference their argument in superior court urging application of the good faith exception (*United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405]), we do not reach this question, since it is a matter for the trial court to determine in the first instance.[1] We also find it unnecessary to discuss petitioners' argument regarding overbreadth of the warrants, since the lack of probable cause alone is sufficient to invalidate them.

Let a peremptory writ of mandate issue directing the respondent court to vacate its August 7, 1995, order. Should respondent find either search was

---

[1] In denying petitioners' motion the trial court did not reach the question of good faith reliance on the warrants. This court's order of August 18, 1995, only prevented the release of documents to the district attorney; it did not stay any further proceedings in superior court. Thus, it is conceivable that the trial court may find the *Leon* exception inapposite or moot under the current procedural circumstances. In any event it is inappropriate for this court to address the issue in this proceeding.

executed without good faith reliance on the warrant, it shall order the return of the seized property to the appropriate petitioner.

Wunderlich, J., and Mihara, J., concurred.