[No. C036539. Third Dist. Sept. 13, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES WALTER YOUNG, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II. and III. of the Discussion.

■■■■■■

## COUNSEL

Fay Arfa, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stephen G. Herndon and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—A jury convicted defendant of transportation of 135.3 grams of marijuana in his car. (Health & Saf. Code,[1] § 11360, subd. (a).) Defendant contends the trial court erred by (a) failing to instruct the jury, sua sponte, on mistake of fact because defendant believed he was entitled to transport marijuana under the Compassionate Use Act of 1996 (§ 11362.5);[2] (b) failing to instruct the jury the offense of transportation of marijuana requires the specific intent to transport it; and (c) refusing to allow his attorney to make arguments under the Compassionate Use Act during closing argument. He further argues the cumulative effect of these errors deprived him of a fair trial.

In the published portion of the opinion, we conclude under the circumstances of this case the Compassionate Use Act does not provide defendant with a defense. In the unpublished portion of the opinion, we reject defendant's other contentions of prejudicial error. We shall therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 6, 1999, California Highway Patrol Officer Rick LaGroue was on patrol in Tehama County on State Route 36 between Mineral and

[1]Further undesignated references are to the Health and Safety Code.
[2]Hereafter Compassionate Use Act.

Paynes Creek. He noticed a green car with Oregon plates travelling in the opposite direction. The car abruptly went off the right shoulder of the road and then jerked back onto the road.

Officer LaGroue made a U-turn to investigate. By the time he caught up with the car, it had pulled over on the shoulder. Officer LaGroue went up to speak with the driver. Defendant was the sole occupant of the car. Defendant told the officer he lived in Paynes Creek. The contents of the car included an ice chest, two toolboxes and tools, four duffel bags filled with clothing and tools, some speakers, cassettes, a boom box, a television, and other miscellaneous items.

While the officer was conducting a routine records check on the defendant, the defendant took off his straw hat and dropped it on a small blue gift bag on the passenger side floorboard of his car. The officer asked defendant if he had any drugs in the car. Defendant told him he had marijuana in the blue gift bag he then handed it to the officer. The gift bag contained a baggie of marijuana marked "Awesome Shake Bud," a black tin container, some cigarette rolling papers, a rolling device, matches, and 16 burnt marijuana ends (roaches). The black tin contained a smoking pipe, 21 hand-rolled marijuana cigarettes, another roach, and a small sandwich baggie containing marijuana marked "Maggie."

The officer searched the car and found another clear gallon-sized baggie containing marijuana marked "Rhonda Flower" with a "121" crossed out with a "113" next to it. The officer also found a second gallon-sized baggie containing seven smaller bags of marijuana marked with the words "Star-76." All told, the officer recovered 135.3 grams (about 4.74 ounces) of marijuana.

Defendant handed Officer LaGroue a document entitled "California Compassionate Use Act of 1996, Health & Safety Code § 11362.5, Physician's Statement." That document stated: "James W. Young . . . is under my medical care and supervision for treatment of the serious medical condition(s): Traumatic Arthritis Major Dep [*sic*] Recurrent . . . . I have discussed the medical risks and benefits of cannabis use with him/her as an appropriate treatment. I recommend and approve his/her use of cannabis with the following limitations/conditions: No more than ten plants." The document was signed by Dr. Tod H. Mikuriya.

The People filed an information charging defendant with transportation of marijuana and alleging he had served a prior prison term. (Health & Saf. Code, § 11360, subd. (a); Pen. Code, § 667.5, subd. (b).)

At his jury trial, defendant called the custodian of records for Dr. Mikuriya's office who testified the certificate was a business record from his office.

Defendant also called Marjorie Goode who testified she gave names to different marijuana plants, including "Star-76," "Maggie," and "Rhonda."

The defendant's stepfather testified he helped defendant load up his belongings into his car the day he was arrested. The defendant, however, left some of his belongings at his home in Paynes Creek.

Defendant did not testify. Other than the mere presentation of the certificate, he produced no evidence as to his medical condition, his need for marijuana, how much he used at a time, or how often he used it. He produced no evidence quantifying how much marijuana 10 plants could produce. He did not present any evidence as to what his belief was as to his ability to transport marijuana or that he was mistaken that the Compassionate Use Act provided him with a defense to the transportation charge.

The jury convicted defendant of transportation of marijuana. (§ 11360, subd. (a).) Defendant waived a jury trial on the prior prison term allegation and the trial court found it to be true.

The trial court sentenced defendant to four years in state prison. Defendant appeals.

DISCUSSION

I. *Mistake of Fact Instruction*

◼ Defendant argues the trial court erred in failing to instruct the jury on *mistake of fact*. Defendant claims he was mistaken because he thought the marijuana he transported was medicine. We reject this argument because defendant was under an inexcusable *mistake of law* that the Compassionate Use Act provided him with a defense to transportation of marijuana.

◼ "[A] trial court's duty to instruct, sua sponte, or on its own initiative, on particular defenses . . . aris[es] 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' [Citations.]" (*People v. Barton* (1995) 12 Cal.4th 186, 195 [47 Cal.Rptr.2d 569, 906 P.2d 531].)

◼ Defendant's claim brings us to the often difficult distinction between the defense of mistake of fact and mistake of law. On the one hand, an

" ' "honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense . . . ." ' [Citation.] 'The primordial concept of *mens rea*, the guilty mind, expresses the principle that it is not conduct alone but conduct accompanied by certain specific mental states which concerns, or should concern, the law. In a broad sense the concept may be said to relate to such important doctrines as justification, excuse, mistake, necessity and mental capacity, but in the final analysis it means simply that there must be a "joint operation of act and intent," as expressed in section 20 of the Penal Code.' [Citation.]" (*People v. Lucero* (1988) 203 Cal.App.3d 1011, 1016 [250 Cal.Rptr. 354].)

On the other hand, " 'It is an emphatic postulate of both civil and penal law that ignorance of a law is no excuse for a violation thereof. Of course it is based on a fiction, because no man can know all the law, but it is a maxim which the law itself does not permit anyone to gainsay. It is expected that the jury and the court, where it is shown that in fact the defendant was ignorant of the law, and innocent of any intention to violate the same, will give the defendant the benefit of the fact, and impose only a light penalty . . . . The rule rests on public necessity; the welfare of society and the safety of the state depend upon its enforcement.' " (*People v. Costa* (1991) 1 Cal.App.4th 1201, 1211 [2 Cal.Rptr.2d 720].)

*People v. Costa, supra,* 1 Cal.App.4th 1201, 1210-1211, explained the distinction between a mistake of law and a mistake of fact. In *Costa*, the defendant had been convicted of manufacturing amphetamine. (*Id.* at p. 1204.) Defendant argued he was entitled to a jury instruction on the mistake of fact defense. (*Id.* at p. 1208.) Defendant's claimed mistake was that he gave his codefendant (Wolden) permission to use his garage for the purpose of manufacturing amphetamine because he believed Wolden was a police informant who was immune from prosecution under section 11367. (*People v. Costa, supra,* at pp. 1210-1211.) Further, defendant believed he was entitled to immunity because he was helping Wolden. (*Id.* at pp. 1210-1211.) The court characterized the issue as "whether an honest and reasonable belief that the person one is aiding in the commission of an otherwise criminal act is immune from prosecution provides a defense for such aid." (*Id.* at p. 1211.) The court concluded, "This defense consists of two mistakes, one of fact and one of law. [The defendant's] mistake of fact was believing that Wolden was acting as a police informant. [The defendant's] mistake of law was believing that the statutory grant of immunity provided for by section 11367 extended to those who assist the informant. Even if Wolden had been acting as an informant when he came to the [defendant's] home, his assurances to [the defendant] that he was not going to do anything

illegal did not make [the defendant's] participation in the manufacturing of a controlled substance lawful." (*Ibid.*) "[The defendant's] testimony reveals that he did intend to assist in the manufacturing of a controlled substance, but that he did not intend to break the law. Although we would expect this explanation, if believed, to influence a sentencing court, it is just that: an explanation rather than an excuse." (*Ibid.*) The defendant's belief "that whatever immunity an informant had extended to him as well, which is an inexcusable mistake of law. [¶] Because the mistake of fact defense has no application to the facts of this case, the trial court had no duty to instruct on it." (*Id.* at p. 1212.)

Here, as we shall explain, because the Compassionate Use Act does not provide defendant with a defense to the charge of transportation of marijuana, his assumption this defense applied to him was an inexcusable mistake of law, not a mistake of fact.

In 1996, the voters of this state enacted the Compassionate Use Act "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes . . . ." (§ 11362.5, subd. (b)(1)(A).) Subdivision (d) of the Compassionate Use Act provides: "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."

In *People v. Trippet* (1997) 56 Cal.App.4th 1532, 1549-1551 [66 Cal.Rptr.2d 559], Division Two of the First District Court of Appeal examined whether the Compassionate Use Act provided the defendant with a defense to charges she transported marijuana. The court stated, "the statute specifically identifies only two penal provisions (out of five) from article 2 of division 10 of the [Health and Safety] Code, section 11357, dealing with possession, and section 11358, dealing with cultivation, etc. It would have been a simple matter for the drafters to have included a reference to section 11360 within subdivision (d) of section 11362.5. Thus, that subdivision could just as easily have read: 'Sections 11357, 11358 and 11360 shall not apply to a patient . . . who possesses, cultivates, or transports marijuana for the personal medical purposes of the patient'—but it doesn't. We may not infer exceptions to our criminal laws when legislation spells out the chosen exceptions with such precision and specificity." The court went on, "Not only is there no evidence of any 'contrary' intent here, indeed the voters were expressly told by the Legislative Analyst that the proposed law 'does not change other legal prohibitions on marijuana . . . .' [Citation.] This

symmetry between legal principle and evidence of the voters' intent compels the conclusion that, as a general matter, Proposition 215 does not exempt the transportation of marijuana allegedly used or to be used for medical purposes from prosecution under section 11360." (*Id.* at p. 1550.)

Despite the plain language of the statute, the *Trippet* court stated, "practical realities dictate that there be *some* leeway in applying section 11360 in cases where a Proposition 215 defense is asserted to companion charges. The results might otherwise be absurd. For example, the voters could not have intended that a dying cancer patient's 'primary caregiver' could be subject to criminal sanctions for carrying otherwise legally cultivated and possessed marijuana down a hallway to the patient's room. Our holding does not, therefore, mean that *all* transportation of marijuana is without any defense under the new law. But so stating is a far cry from agreeing that transportation of two pounds of marijuana in a car by one who claims to suffer from migraine headaches is, even assuming the necessary medical approval, ipso facto permissible, as appellant would have it. The test should be whether the quantity transported and the method, timing and distance of the transportation are reasonably related to the patient's current medical needs. If so, we conclude there should and can be an implied defense to a section 11360 charge; otherwise, there is not." (*People v. Trippet, supra,* 56 Cal.App.4th at pp. 1550-1551.) The *Trippet* court remanded the case so that the defendant could attempt to prove that he met this test. (*Id.* at p. 1551.)

In *People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1393-1395 [70 Cal.Rptr.2d 20], Division Five of the First District Court of Appeal rejected the argument the Compassionate Use Act provided a defense to the sale or giving away of marijuana under section 11360, subdivision (a). The court reiterated the *Trippet* court's observation that the Compassionate Use Act specifically included sections 11357 (possession) and 11358 (cultivation), and did not include any reference to section 11360 (transportation and sale). (*Peron,* at p. 1392.) The *Peron* court also found the arguments tendered to the electorate in support of the Compassionate Use Act supported the conclusion section 11360 was not included under the Compassionate Use Act (i.e., that the Compassionate Use Act would not change the law in any other respects, and " '[p]olice officers can still arrest anyone who grows too much, or tries to sell it' "). (*Peron,* at p. 1393, italics omitted.) In rejecting the Cannabis Buyers' Club's argument the judiciary must interpret the act as permitting them to sell marijuana, the court concluded, "By doing so, we would initiate a decriminalization of sales of and traffic in marijuana in this state. Whether that concept has merit is not a decision for the judiciary. It is one the Legislature or the people by initiative are free to make. Proposition 215, in enacting section 11362.5, did not do so." (*Id.* at pp. 1394-1395.)

This issue was again litigated in *People v. Rigo* (1999) 69 Cal.App.4th 409 [81 Cal.Rptr.2d 624]. There, Division One of the First District Court of Appeal concluded that despite the enactment of the Compassionate Use Act, "[t]he acts of selling, giving away, transporting, and growing large quantities of marijuana remain criminal." (*Id.* at p. 415.)

We agree with *Peron* and *Rigo*. The Compassionate Use Act does not provide a defense to the transportation of marijuana in the circumstances presented here. The statute on its face exempts only possession and cultivation from criminal sanctions for qualifying patients. (§ 11362.5, subd. (d).) It does not exempt transportation as defined in section 11360. " 'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301 [58 Cal.Rptr.2d 855, 926 P.2d 1042], quoting *Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 543 [277 Cal.Rptr. 1, 802 P.2d 317].)

We need not decide whether we agree with the *Trippet* court that incidental transportation of marijuana from the garden to a qualifying patient may implicitly fall within the safe haven created by the Compassionate Use Act. This case does not involve the movement of marijuana from a plant legally cultivated in a garden to a seriously ill cancer patient but rather the transportation of marijuana in a vehicle. That kind of transportation is not made lawful by the Compassionate Use Act.

Defendant's conclusion this statute applied to him was a misapprehension of the law that does not provide him with a defense. The trial court committed no error in failing to give a mistake of fact instruction.

II., III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

IV.  *Cumulative Error*

Defendant finally argues the cumulative effect of the above errors constitutes prejudicial error. We reject this claim.

---

*See footnote, *ante*, page 229.

## DISPOSITION

The judgment is affirmed.

Davis, J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 12, 2001. Moreno, J., was of the opinion that the petition should be granted.