[No. S128442. Nov. 27, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
SHAUN ERIC WRIGHT, Defendant and Appellant.

**84**

COUNSEL

Maureen J. Shanahan, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Donald E. de Nicola, Deputy State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela A. Ratner Sobeck, Marc J. Nolan, Ana R. Duarte and Erika Hiramatsu, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MORENO, J.**—The Compassionate Use Act of 1996 (the CUA) ensures that Californians who obtain and use marijuana for specified medical purposes upon the recommendation of a physician are not subject to certain criminal sanctions. (Health & Saf. Code, § 11362.5.)[1] Specifically, the CUA provides an affirmative defense to the crimes of possessing marijuana (§ 11357) and cultivating marijuana (§ 11358) for physician-approved personal medical purposes. (§ 11362.5, subd. (d).) However, the CUA does not provide a defense to the crime of transporting marijuana. A conflict arose in the Court of Appeal regarding whether and under what circumstances an implied defense to this offense existed under the statute. (Compare *People v. Trippet* (1997) 56 Cal.App.4th 1532 [66 Cal.Rptr.2d 559] with *People v. Young* (2001) 92 Cal.App.4th 229 [111 Cal.Rptr.2d 726].) In this case, defendant Shaun Eric Wright was convicted of transporting marijuana after the trial court

---

[1] All further undesignated statutory references are to this code.

declined to instruct the jury that the CUA provided a defense to that charge. The Court of Appeal, concluding the refusal was prejudicial error, reversed. We granted review to resolve the issue.

■ While this case was pending, however, the Legislature enacted the Medical Marijuana Program (MMP), one purpose of which was to address issues not included in the CUA so as to promote the fair and orderly implementation of the CUA. (§ 11362.7 et seq.) Among its provisions, the MMP specifically provides an affirmative defense to the crime of transporting marijuana by individuals entitled to the protections of the CUA. (§ 11362.765.) The MMP has been held to apply retroactively to cases pending at the time of its enactment. (*People v. Urziceanu* (2005) 132 Cal.App.4th 747 [33 Cal.Rptr.3d 859]; *People v. Frazier* (2005) 128 Cal.App.4th 807 [27 Cal.Rptr.3d 336].)

Defendant contends that the MMP applies in this case and provides an alternative ground to affirm the judgment of the Court of Appeal. We agree that the MMP applies retroactively to cases pending at the time of its enactment and, therefore, to the present case. We conclude, moreover, that, because defendant presented sufficient evidence to entitle him to an instruction on the CUA as an affirmative defense to the transportation charge, it was error for the trial court to have refused this instruction. Nonetheless, contrary to the Court of Appeal, for the reasons set forth below, we conclude further that the instructional error was harmless.

## FACTS

On September 20, 2001, Huntington Beach police officers received a tip that a vehicle at a car wash smelled as if it contained marijuana and that, specifically, a backpack in the vehicle "reeked of marijuana." Officer Mark Armando and two other officers, including Sergeant Henry Cuadras, responded to the call. Officer Armando stopped defendant near the car wash as defendant was driving away in his black Toyota pickup truck. The driver's side window was rolled down. As he approached the truck, Armando noticed a strong odor of marijuana coming from within the truck and observed a backpack on the seat next to defendant. Armando told defendant about the tip and asked him if there was marijuana in his truck. Defendant said no. Armando had defendant step outside the truck. Defendant got out of the truck holding the backpack. Armando again asked defendant whether there was any marijuana in the truck and defendant again said no.

Sergeant Cuadras conducted a patdown search of defendant that yielded a small baggie of marijuana in defendant's pants pocket. Armando searched defendant's backpack and found six small baggies of marijuana, two large bags of marijuana and an electronic scale. The small baggies ranged in weight from 4.8 grams to 9.7 grams while the large bags of marijuana each weighed 30.6 grams, or slightly more than an ounce. A search of defendant's truck yielded a large bag of marijuana concealed in a storage compartment behind the passenger seat. The bag weighed 469.4 grams, or slightly more than a pound. No devices for smoking marijuana were found in the truck or on defendant's person.

Defendant was charged by information with possessing marijuana for sale (§ 11359), transporting marijuana (§ 11360, subd. (a)), and driving on a suspended or revoked license (Veh. Code, § 14601.1, subd. (a).)[2]

Defendant's trial commenced on May 1, 2002. Both Officer Armando and Sergeant Cuadras testified that in their opinion defendant possessed the marijuana to sell, not for his personal use. They based their opinions on the quantity of marijuana in defendant's possession, the manner in which it was packaged and concealed in his vehicle, and the presence of the scale in his backpack.

Following Officer Armando's testimony, the trial court conducted a hearing pursuant to Evidence Code section 402 on defendant's request for a jury instruction based on the CUA.[3] Dr. William Eidelman testified on defendant's behalf that he had recommended that defendant use marijuana to alleviate his medical problems. Eidelman testified that defendant first consulted him on June 7, 2001. At the consultation, defendant brought medical records that

---

[2] Defendant pled guilty to the Vehicle Code charge before trial.

[3] The instruction defendant requested was CALJIC No. 12.14.1 (1999 rev.) which stated: "A person is not guilty of the unlawful [possession] [or] [cultivation] [or] [transportation] of marijuana when the acts of [defendant] [a primary caregiver] are authorized by law for compassionate use. [¶] [A 'primary caregiver' means the individual designated by [the person exempted] . . . who is consistently assigned responsibility for the housing, health, or safety of that person.] [¶] The defendant has the burden of proving by a preponderance of the evidence all the facts necessary to establish the elements of this defense, namely: [¶] 1. [The defendant] . . . suffered from a medical condition where use of marijuana as a treatment was medically appropriate; [¶] 2. [The defendant's] . . . use of marijuana was recommended by a physician who had determined orally or in writing that the [defendant's] [patient's] health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana promotes relief; and [¶] [[3.] [¶] The amount of marijuana [possessed] [or] [cultivated] was reasonably related to [the defendant's] . . . then current medical needs [.]] [; or] [¶] [[3.] [¶] The amount of marijuana transported at the time of defendant's arrest was, considering the quantity, method, timing and distance of the transportation, reasonably related to [the defendant's] . . . then medical needs.]"

pertained to a shoulder injury he had suffered as the result of a bicycle accident in 1994. He complained of chronic pain in his legs and shoulder, abdominal problems from a stomach parasite, and emotional distress. After performing a physical examination of defendant, Dr. Eidelman wrote a letter approving a self-regulating dose of marijuana to relieve defendant's chronic pain and to treat the decreased appetite he experienced as a result of his stomach problems. Defendant told Dr. Eidelman that he preferred eating marijuana to smoking it.

Dr. Eidelman saw defendant again on November 30, 2001, following defendant's arrest. He and Dr. Eidelman discussed the fact that defendant preferred to eat marijuana, a practice that required a larger amount of marijuana than smoking it to achieve the same effect. Defendant told Dr. Eidelman that, when he ate marijuana, a pound of it usually lasted him two to three months. At defendant's request, Dr. Eidelman wrote a letter on his behalf approving defendant's use of a pound of marijuana every two to three months. At the hearing, Eidelman testified that a pound every two or three months was consistent with the manner in which defendant stated that he ingested marijuana.

Defendant also testified at the evidentiary hearing. Defendant described injuries to his leg, collarbone and shoulder and a stomach ailment that caused him severe chronic pain. His shoulder injury prevented him from sleeping through the night and had forced him to give up his employment as a carpenter. Defendant also testified that his stomach ailment caused him to suffer nausea and chronic diarrhea and had also affected his appetite.

At the conclusion of the evidentiary hearing, the trial court ruled that the CUA did not apply "in a transportation case where we have one pound, three ounces of marijuana." The trial court also rejected defendant's request for a CUA instruction with regard to the possession for sale count. However, the court allowed the defense to present evidence of medical use as proof that defendant possessed the marijuana for personal medical use and not to sell.

At the resumed trial, Dr. Eidelman testified that defendant's use of a pound of marijuana over a two- or three-month period was reasonable. Dr. Eidelman based his approval of defendant's use of marijuana on defendant's medical records, a physical examination of defendant and conversations with defendant regarding his preference to eat marijuana.

Defendant testified that the marijuana he possessed was for his own personal medical use and not to sell. He testified that he had been smoking marijuana since 1991 to alleviate the chronic pain he experienced as a result of his various injuries. He explained that, while he smoked about an eighth of

an ounce of marijuana a day, he preferred to eat it, and that the pound of marijuana found in his vehicle was for cooking. He also testified that the pound of marijuana would yield eight ounces for cooking.

Defendant testified further that, on the morning of his arrest, he had purchased the marijuana found by the police packaged in the manner in which they found it. He explained that he had not purchased the marijuana in a single large bag because it had different potencies and was used for different purposes, like cooking as opposed to smoking. Defendant testified that after purchasing the marijuana, he went to get the oil in his truck changed and his truck washed and was on his way home when the police stopped and arrested him. Defendant did not explain why he had a scale in his possession when he was arrested.

Before closing arguments, the defense renewed its request to give a compassionate use defense jury instruction. The trial court again declined to give the instruction.

After the jury was instructed, but before closing arguments, the judge received several questions from individual members of the jury. Among those questions was "Is marijuana for medicinal purposes acceptable with the law?" and "Can a doctor legally prescribe marijuana?" The court declined to answer these questions, but instead told the jury to listen to closing arguments of both counsel and "if you still have questions after argument, you can submit the questions again and I'll go ahead and do my very best to answer your questions. But . . . it may very well be that the attorneys will answer these questions in their argument."

At the outset of his closing argument, the prosecutor stated: "[I]s a medical recommendation from some sort of doctor a defense to any of these charges? No, it is not. No defense." Toward the end of his argument, he returned to this point: "Is that a defense? Because any type of doctor recommends that he use it? No, it's not, not for any of those charges. So, don't fall for that either."

Defense counsel argued that the marijuana found in defendant's vehicle was for his personal use to alleviate the pain he experienced from his various ailments, thus negating any intent to sell marijuana. "When you look at the circumstances overall, you will find that he was not intending to sell that marijuana. He had certain conditions. Whether you agree with the treatment or whether it was really necessary or not is really not the point. The point is that he felt that way. The doctor felt that way. And that's what he was using it for." Defense counsel also argued further that Dr. Eidelman's testimony regarding the efficacy of marijuana for medical use, and the defendant's use of it to alleviate his various ailments, was uncontroverted by other expert

testimony. "We don't have any opposing expert saying that the doctor's opinion or testimony is just completely out of whack or in violation of some law. We have no opposing expert testimony on that issue."

The jury was instructed, among other things, that to convict defendant of possession for sale of marijuana it must find beyond a reasonable doubt that he possessed the marijuana with the specific intent to sell the drug. The jury was further instructed that, if it was not convinced beyond a reasonable doubt that he possessed the marijuana to sell, it could nonetheless convict him of the lesser included offense of simple possession of marijuana, a misdemeanor.

The jury convicted defendant of both possessing marijuana for sale and transporting marijuana.

At defendant's sentencing hearing, the trial court acknowledged that "we should have had a compassionate use instruction."[4] Defendant appealed. A divided panel of the Court of Appeal reversed his conviction on both the transportation and possession for sale counts based on the trial court's failure to give a CUA instruction.

We granted the Attorney General's petition for review.

DISCUSSION

I.

Adopted by the voters on November 5, 1996, the purpose of the CUA is three-fold: "(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician . . . . [¶] (B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction. [¶] (C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana." (§ 11362.5, subd. (b)(1).)[5]

---

[4] The particular instruction that defendant requested was later disapproved by this court to the extent that it required the defendant to establish the defense by a preponderance of the evidence. Instead, the defendant need only raise a reasonable doubt as to facts that would support a CUA defense. (*People v. Mower* (2002) 28 Cal.4th 457, 464 [122 Cal.Rptr.2d 326, 49 P.3d 1067].)

[5] Both sides agree that the Supreme Court's decision in *Gonzales v. Raich* (2005) 545 U.S. 1 [162 L.Ed.2d 1, 125 S.Ct. 2195] wherein the court held that federal criminal sanctions may be

The CUA provides a defense for physician-approved possession and cultivation of marijuana: "Section 11357, relating to the possession of marijuana, and section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).)

Almost immediately after the CUA became effective, questions arose about whether it provided a defense to marijuana-related offenses not specified in its text, including the crime of transporting marijuana. (§ 11360.) In *People v. Trippet, supra*, 56 Cal.App.4th at page 1550, the reviewing court squarely confronted this question. In that case, the defendant was convicted of transporting marijuana and possessing marijuana. While her appeal was pending, the voters adopted the CUA. The defendant argued that the CUA applied retroactively and, as such, provided a defense to both charges of which she was convicted. (56 Cal.App.4th at p. 1544.)

Preliminarily, the court found that the CUA applied retroactively, a point the Attorney General conceded. "As the Attorney General concedes, absent contrary indicia, 'the Legislature is presumed to have extended to defendants whose appeals are pending the benefits of intervening statutory amendments which decriminalize formerly illicit conduct [citation], or reduce the punishment for acts which remain unlawful. [Citations.] No different rule applies to an affirmative defense to the crime for which a defendant was convicted, which defense was enacted during the pendency of her appeal.' Proposition 215 contains no savings clause and so, as the Attorney General further concedes, 'it may operate retrospectively to defend against criminal liability, in whole or part, for some who are appealing convictions for possessing, cultivating and using marijuana.' [¶] We agree with this assessment." (*People v. Trippet*, 56 Cal.App.4th at pp. 1544–1545.)

But *Trippet* concluded that the voters did not intend for the CUA to provide a defense to any marijuana-related offense not specifically named in the initiative, including transporting marijuana. (*People v. Trippet, supra*, 56 Cal.App.4th at p. 1550.) Nonetheless, the court acknowledged that "practical realities dictate that there be *some* leeway in applying section 11360 in cases where a Proposition 215 defense is asserted to companion charges. The results might otherwise be absurd." (*Ibid.*)

As the court pointed out, "the voters could not have intended that a dying cancer patient's 'primary caregiver' could be subject to criminal sanctions for

applied to individuals with respect to the cultivation and possession of marijuana notwithstanding the CUA is not implicated in this case because it involves the applicability of the CUA to state criminal charges only.

carrying otherwise legally cultivated and possessed marijuana down a hallway to the patient's room." (*People v. Trippet, supra,* 56 Cal.App.4th at p. 1550.) In reaching this conclusion, the court declined the defendant's invitation "to interpret the statute as a sort of 'open sesame' regarding the possession, transportation and sale of marijuana" whereby "transportation by any means and in any quantity desired is now also completely protected." (*Id.* at p. 1546 & fn. 8.) Instead, the court held that an implied defense to a section 11360 charge should apply where "the quantity transported and the method, timing and distance of the transportation are reasonably related to the patient's current medical needs." (56 Cal.App.4th at pp. 1550–1551.) Concluding that there was a "remote" possibility that the defendant could meet this test, notwithstanding the fact that she had been arrested with two pounds of marijuana in her car, the court remanded the case to the trial court to determine if an implied defense applied to the transportation charge. (*Id.* at p. 1551.)

*People v. Young, supra,* 92 Cal.App.4th 229, revisited the issue of whether the CUA provides an implied defense to a charge of transporting marijuana. In *Young,* the defendant was stopped in his car and found to be in possession of less than five ounces of marijuana. He provided the police officer who stopped him with a written recommendation from his physician authorizing his use of marijuana for arthritis. (92 Cal.App.4th at p. 232.) Nonetheless, he was charged with and convicted of transporting marijuana. On appeal, he argued that the trial court erred by failing to instruct the jury on a mistake of fact defense, that is, that he mistakenly believed the marijuana he was transporting was medicine. The Court of Appeal "rejected[ed] this argument because defendant was under an inexcusable *mistake of law* that the Compassionate Use Act provided him with a defense to transportation of marijuana." (*Id.* at p. 233.)

*Young* agreed with *Trippet* that the CUA did not provide a defense to a charge of transporting marijuana but noted, somewhat critically, that "[d]espite the plain language of the statute" *Trippet* had found a limited implied defense to that offense. (*People v. Young, supra,* 92 Cal.App.4th at p. 236.) The court asserted that it "need not decide whether we agree with the *Trippet* court that incidental transportation of marijuana from the garden to a qualifying patient may implicitly fall within the safe haven created by the Compassionate Use Act. This case [involves] . . . the transportation of marijuana in a vehicle. That kind of transportation is not made lawful by the Compassionate Use Act." (*Id.* at p. 237.)

While, ostensibly, *Young* found it was unnecessary for it to explicitly agree or disagree with *Trippet,* its categorical conclusion that transporting marijuana in a vehicle is not protected by the CUA was directly contrary to

*Trippet.* In *Trippet*, the court held that the defendant, who was arrested while transporting two pounds of marijuana in her car, might nonetheless be able to establish a CUA defense to transportation if she could meet the test set out in *Trippet* that the "quantity transported and the method, timing and distance of the transportation are reasonably related to the patient's current medical needs." (*People v. Trippet, supra,* 56 Cal.App.4th at p. 1551.) That broad test itself is irreconcilable with the categorical statement in *Young* that transporting marijuana in a vehicle "is not made lawful by the Compassionate Use Act." (*People v. Young, supra,* 92 Cal.App.4th at p. 237.)

In the case before us, the Court of Appeal concluded that *Trippet,* and not *Young,* was the better-reasoned decision.[6] Applying *Trippet's* quantity, method, timing, and distance standard, the Court of Appeal concluded that defendant had introduced sufficient evidence to support a CUA instruction and that the failure of the trial court to have granted his request for the instruction was reversible error.

While the case was pending before this court, however, the Legislature stepped in and addressed this issue directly by enacting the MMP, in which it extended a CUA defense to a charge of transporting marijuana where certain conditions are met. (§ 11362.765 et seq.) Because we conclude that the MMP applies to this case, it is unnecessary to resolve the split of authority between *Trippet* and *Young.* In any event, enactment of the MMP has rendered moot the conflict between these decisions as to whether the CUA provides a defense to a charge of transportation of marijuana.[7] We now turn to the question of whether defendant has met the conditions set forth in the MMP to assert a CUA defense to a charge of transporting marijuana.

## II.

We begin by examining the provisions of the MMP relevant to the issue presented in this case. "Our role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning." (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040 [130 Cal.Rptr.2d 672, 63 P.3d 228].) In construing the MMP, we are also aided by the Legislature's extensive declaration of intent.

---

[6] Notably, in the Court of Appeal the Attorney General also agreed that *Trippet* was correct, a position he reiterates here. The Attorney General simply disagrees that the application of the *Trippet* standard in this case requires reversal.

[7] As both sides acknowledged at argument, however, *Trippet's* test for whether the defense applies in a particular case survived the enactment of the MMP and remains a useful analytic tool to the extent it is consistent with the statute.

The MMP was introduced in 2003 as Senate Bill No. 420 (2003–2004 Reg. Sess.). In uncodifed portions of the bill the Legislature declared that, among its purposes in enacting the statute, was to "[c]larify the scope of the application of the act and facilitate the prompt identification of qualified patients and their designated primary caregivers in order to avoid unnecessary arrest and prosecution of these individuals and provide needed guidance to law enforcement officers." (Stats. 2003, ch. 875, § 1.) Additionally, the Legislature declared that a further purpose of the legislation was to "address additional issues that were not included within the act, and that must be resolved in order to promote the fair and orderly implementation of the act." (*Id.*, § 1.)

To achieve the goal of "facilitat[ing] the prompt identification of qualified patients and their designated primary caregivers," the Legislature established a voluntary program for the issuance of identification cards to such qualified patients. (§ 11362.71 et seq.) The Legislature extended certain protections to individuals who elected to participate in the identification card program. Those protections included immunity from prosecution for a number of marijuana-related offenses that had not been specified in the CUA, among them transporting marijuana. "Subject to the requirements of this article, the individuals specified in subdivision (b) shall not be subject, on that sole basis, to criminal liability under Section 11357 [possession of marijuana], 11358 [cultivation of marijuana], 11359 [possession for sale], 11360 [transportation], 11366 [maintaining a place for the sale, giving away or use of marijuana], 11366.5 [making available premises for the manufacture, storage or distribution of controlled substances], or 11570 [abatement of nuisance created by premises used for manufacture, storage or distribution of controlled substance]." (§ 11362.765, subd. (a).) By authorizing a CUA defense to these other marijuana-related offenses, the Legislature furthered its goal of "address[ing] additional issues that were not included within the act, and that must be resolved in order to promote the fair and orderly implementation of the act." (Stats. 2003, ch. 875, § 1.)

■ The Legislature did not limit the availability of a CUA defense to these other marijuana-related offenses only to individuals who chose to participate in the card identification program. Rather, in subdivision (b) of section 11362.765, the Legislature defined the individuals exempt from criminal liability for the offenses designated in subdivision (a) as including "(1) A qualified patient *or* a person with an identification card who transports or processes marijuana for his or her own personal medical use." (§ 11362.765, subd. (b), italics added.)

■ The MMP defines the term "qualified patient" as "a person who is entitled to the protections of Section 11362.5, but who does not have an

identification card issued pursuant to this article." (§ 11362.7, subd. (f); see also § 11362.71, subd. (f) ["It shall not be necessary for a person to obtain an identification card in order to claim the protections of Section 11362.5"].) Section 11362.5 is, of course, the CUA. ■ A person is entitled to the protections of the CUA if that person is a "seriously ill" Californian whose use of marijuana "has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief." (§ 11362.5, subd. (b)(1)(A).)[8]

■ Thus, under the MMP, either the holder of an identification card or a "qualified patient"—someone entitled to the protections of the CUA, but who does not have an identification card—may assert the CUA as a defense to a charge of transporting marijuana. Defendant maintains that he is a "qualified patient" for purposes of the MMP and should be given the benefit of the defense it provides to a charge of transporting marijuana. To reach his claim, however, we must first determine whether the MMP applies retroactively to pending cases. We conclude that it does.

The retroactivity of the CUA itself was, as previously noted, firmly established by *People v. Trippet, supra*, 56 Cal.App.4th 1532. As the court there explained, the new defenses to possessing and cultivating marijuana extended by the CUA to individuals who use marijuana for medicinal purposes applied to cases pending on appeal. *Trippet* based its analysis on decisions from this court: "The clearest precedent on point is *People v. Rossi* (1976) 18 Cal.3d 295, 299–302 [134 Cal.Rptr. 64, 555 P.2d 1313]. The defendant in that case had been convicted of violating the pre-1976 version of Penal Code section 288a by committing various sexual acts during the filming of what the court euphemistically termed 'low-budget movies.' (18 Cal.3d at p. 298.) After her conviction, and during the period that conviction was on appeal, the Legislature amended section 288a to decriminalize the acts performed by the defendant. The Supreme Court, relying heavily on its decade-earlier decision in *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], ruled that the amendment could be applied to preclude criminal sanctions for the defendant's acts. The precise holding in *Estrada* was that a superseding reduction in the punishment accorded a particular violation could be applied retroactively; the *Rossi* court, however, had no difficulty applying that principle to the slightly different facts before it. It held that '. . . the common law principles reiterated in *Estrada* apply a fortiori when criminal sanctions have been completely repealed before a criminal conviction becomes final.' (*People v. Rossi, supra*, 18 Cal.3d at p. 301; see

[8] The MMP contains its own definition of "serious medical condition" that is somewhat broader than that set forth in the CUA. (§ 11362.7, subd. (h).)

also *People* v. *Babylon* (1985) 39 Cal.3d 719, 722 [216 Cal.Rptr. 123, 702 P.2d 205] ['. . . absent a saving clause, a criminal defendant is entitled to the benefit of a change in the law during the pendency of his appeal . . . .'].) [¶] This authority makes clear that Proposition 215 may be applied retroactively to provide, if its terms and the applicable facts permit, a defense to appellant." (*People v. Trippet, supra,* 56 Cal.App.4th at p. 1545.)

Recent decisions of the Court of Appeal have similarly and unanimously concluded that the MMP should be retroactively applied. In *People v. Urziceanu, supra,* 132 Cal.App.4th 747, the court considered whether the MMP's extension of a CUA defense to the charge of cultivating marijuana provided the defendant in that case with a defense to a charge of conspiracy to possess marijuana. The defendant claimed that the conspiracy count arose out of his involvement in the collective cultivation and distribution of medical marijuana. The court observed that the MMP "represents a dramatic change in the prohibitions on the use, distribution, and cultivation of marijuana for persons who are qualified patients or primary caregivers and fits the defense defendant attempted to present at trial. Its specific itemization of the marijuana sales law indicates it contemplates the formation and operation of medicinal marijuana cooperatives that would receive reimbursement for marijuana and the services provided in conjunction with the provision of that marijuana." (132 Cal.App.4th at p. 785.)

On the issue of retroactivity of the MMP, the court, after citing *Trippet*'s conclusion regarding the retroactivity of the CUA declared: "The same reasoning applies here. . . . [T]he Medical Marijuana Program Act sets forth the new affirmative defense allowing collective cultivation of marijuana, expands the defense to penal sections not identified by the Compassionate Use Act, and contains no savings clause. These facts lead us to the conclusion that this law must also be retroactively applied." (*People v. Urziceanu, supra,* 132 Cal.App.4th at p. 786; accord, *People v. Frazier, supra,* 128 Cal.App.4th at p. 826 ["To the extent that the Medical Marijuana Program sets forth new affirmative defenses, expands the defense identified by the Compassionate Use Act, and contains no savings clause, that law must be retroactively applied"].) We agree with the analysis set forth in *Trippet, Urziceanu* and *Frazier* and conclude, therefore, that the MMP must be retroactively applied.

■ "That, however, does not end the inquiry. Retroactive application of a defense is only required 'if its terms and the applicable facts permit, a defense to' defendant." (*People v. Frazier, supra,* 128 Cal.App.4th at p. 826, quoting *People v. Trippet, supra,* 56 Cal.App.4th at p. 1545.) Here, the preliminary question is whether there was substantial evidence that defendant is "a qualified patient" as that term is defined in section 11362.7, subdivision (f) as "a person who is entitled to the protections of Section 11362.5, but who does not have an identification card issued pursuant to this

article." Only upon such an evidentiary showing would defendant be entitled to a CUA defense instruction. (*People v. Trippet, supra,* 56 Cal.App.4th at p. 1551, fn. 17 ["Because the statute provides a limited affirmative defense, the burden is, of course, on the defendant to raise the defense and prove its elements"]; cf. *People v. Mower, supra,* 28 Cal.4th at p. 475 [trial court's failure to instruct that defendant was primary caregiver under section 11362.5, subd. (d) was not error because "such an instruction would not have been supported by substantial evidence"].) The evidence presented by defendant at his trial was sufficient to warrant the instruction of the defense. Chronic pain is one of the conditions for which the CUA authorizes use of marijuana. (§ 11362.5, subd. (b)(1)(A).) The testimony of Dr. Eidelman, if believed, would satisfy the statutory requirement of a physician recommendation.

The next question is whether a defense set forth in the MMP was available to defendant. As noted, the MMP specifically provides that a qualified patient shall not be criminally liable for transporting marijuana "for his or her own personal medical use." (§ 11362.765, subd. (b)(1).) In this case, defendant was charged with transporting marijuana. He presented evidence at trial that he had purchased the marijuana found in his car on the morning of his arrest for his own personal medical use and was in the process of transporting the marijuana to his home when he was arrested. This testimony was sufficient to merit instruction on the defense to a charge of transporting marijuana set forth in the MMP.

Notwithstanding the Attorney General's concession in *Trippet* that the CUA, because it extended a new affirmative defense, applied retroactively (*People v. Trippet, supra,* 56 Cal.App.4th at pp. 1544–1545), the Attorney General rejects retroactive application of the MMP here for three reasons: first, defendant failed to identify himself to police as a medicinal user of marijuana; second, the amount in his possession, slightly over a pound, was in excess of the eight ounces permitted to a qualified patient under section 11362.77, subdivision (a); and, third, the jury's implied finding that defendant possessed the marijuana for sale negates a claim that he was transporting it for his personal use only. These arguments, however, confuse the retroactive application of the defense with its efficacy under the particular facts of this case, and on the retroactivity question they are not persuasive.

■ The Attorney General fails to cite any provision of the MMP that supports his assertion that a defendant must identify himself or herself as a medical user of marijuana before he or she can assert a CUA defense to a charge of transporting marijuana. To the contrary, the relevant provisions of the MMP contain no such requirement. Section 11362.7 defines a qualified patient as "a person who is entitled to the protections of [the CUA], but who does not have an identification card issued pursuant to this article." (§ 11362.7, subd. (f).)

Section 11362.765 provides that a "qualified patient . . . who transports . . . marijuana for his or her own personal medical use" shall not be criminally liable for transporting marijuana. (§ 11362.765, subd. (b)(1).) Neither of these provisions requires a qualified patient to identify himself or herself to police as a medicinal user of marijuana as a condition to asserting any defenses extended to such person by the MMP. Thus, the Attorney General's argument has no basis in the statute, nor does he cite any other authority to support it. No doubt evidence that a defendant failed to identify himself or herself to police as a medicinal user of marijuana may have some bearing on whether a jury believes his or her CUA defense, but this is a different question than whether the defendant is entitled to assert the defense at all.

■ The Attorney General's claim that defendant's possession of a greater amount of marijuana than that specified in the MMP negates his entitlement to its defense against a transportation charge fares no better. The Attorney General relies on section 11362.77, subdivision (a), under which a qualified patient is limited to no more than eight ounces of dried marijuana and no more than six mature or 12 immature marijuana plants. Subdivision (b), however, provides that a qualified patient may, pursuant to a doctor's recommendation that a greater amount is required for the patient's medical needs, "possess an amount of marijuana consistent with the patient's needs." (§ 11362.77, subd. (b).) Moreover, the sponsors of Senate Bill No. 420 (2003–2004 Reg. Sess.) made clear that, although couched in mandatory terms, the amounts set forth in section 11362.77, subdivision (a) were intended "to be the threshold, and not a ceiling." (Historical and Statutory Notes, 40 pt. 1 West's Ann. Health & Saf. Code (2006 supp.) foll. § 11362.7, p. 192); *Gonzales v. Raich, supra,* 545 U.S. 1, 31, fn. 41 [162 L. Ed. 1, 125 S.Ct. at p. 2215, fn. 41] [noting that "the quantity limitations [set forth in § 11362.77, subdivision (a)] serve only as a floor"].) In this case, defendant presented testimony at trial by his doctor that the amount of marijuana found in his possession at the time of his arrest was appropriate in light of his medical needs and the manner in which he used the marijuana, e.g., eating it for the most part, rather than smoking it. Again, the possibility that a properly instructed jury might ultimately have disbelieved a CUA defense to the transportation charge is a different matter than whether the jury should have been given the instruction in the first instance.

Finally, the Attorney General argues that defendant is not entitled to a CUA defense to the charge of transporting marijuana because the jury "after considering all the testimony regarding [defendant's] medical use [found] that [defendant] possessed the marijuana with intent to sell rather than for his own personal use." The jury's finding goes not to whether defendant was entitled to advance a CUA defense, or whether the MMP is retroactive, but, as we

discuss in the next part, whether the failure of the trial court to have given the instruction prejudiced defendant.

We therefore conclude that the MMP applies retroactively to this case and that, in light of the MMP and the evidence he presented at trial, defendant was entitled to a compassionate use instruction on the transportation count. The only remaining question is whether the error was prejudicial. We now turn to that issue.

## III.

Defendant contends that the trial court's failure to have given a CUA instruction on the transportation count violated his due process right to present a defense and the error must, therefore, be assessed under the federal standard of prejudice, which asks whether the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].) He maintains that the instructional error was prejudicial under this standard.

In *People v. Mower, supra,* 28 Cal.4th 457, however, we "left open the question of whether an instructional error [involving a CUA defense] is of federal constitutional dimension or only of state law import [citation]" because "the error requires reversal even under the less rigorous [*People v.*] *Watson* [(1956) 46 Cal.2d 818 [299 P.2d 243]] standard." (*Mower, supra,* at p. 484.) Under that standard, reversal is required if " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error.' " (*Ibid.,* quoting *Watson, supra,* at p. 837.) We again need not decide which standard applies, because in this case we conclude that the instructional error was harmless under either standard.

In *People v. Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on other grounds in *People v. Breverman* (1998) 19 Cal.4th 142, 165 [77 Cal.Rptr.2d 870, 960 P.2d 1094], we held that the failure of the trial court to instruct the jury sua sponte on a lesser included offense was harmless beyond a reasonable doubt under circumstances in which "the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a finding that only the lesser offense was committed has been rejected by the jury." (*Sedeno, supra,* at p. 721.) We have applied this principle in evaluating the prejudicial effect of other instructional errors. (See, e.g., *People v. Garrison* (1989) 47 Cal.3d 746, 778–779 [254 Cal.Rptr. 257, 765 P.2d 419] [where, by finding true a

robbery-murder special-circumstance allegation, the jury found the victim was killed in the course of a robbery and any error in burglary-murder special-circumstance instruction was rendered harmless]; cf. *People v. Mayberry* (1975) 15 Cal.3d 143, 157–158 [125 Cal.Rptr. 745, 542 P.2d 1337] [finding by jury that victim did not consent to sexual encounter with defendant did not mean that jury necessarily rejected factual predicate to defendant's affirmative defense of good faith belief in consent].)

■ This analysis applies to the Attorney General's argument that the jury necessarily rejected the factual predicate of the omitted CUA defense— that defendant possessed and, by extension, transported marijuana for his personal medicinal use—when, under other, properly given instructions, it found that he possessed the drug with the specific intent to sell it. We agree with this contention. Under the instructions it was given, the jury had the option of convicting defendant for simple possession had it been convinced by his claim that the marijuana found in his possession was for his personal medicinal use. Instead, it found beyond a reasonable doubt that he possessed the drug with the specific intent to sell it. Accordingly, "the jury necessarily resolved, although in a different setting, the same factual question that would have been presented by the missing instruction" (*People v. Mayberry, supra*, 15 Cal.3d at p. 158), in a manner adverse to defendant. We conclude, therefore, that the instructional error was harmless under any standard of prejudice.[9] As this analysis applies to both of the charges of which defendant was convicted, we reverse the Court of Appeal and reinstate defendant's convictions for possession for sale of marijuana and transportation.[10]

[9] Defendant asserts that the Attorney General's argument "ignores the fact that medical use is completely intertwined with personal use." But the question is whether the jury understood defendant's argument was that he possessed the marijuana for personal medicinal use and necessarily rejected it. Given the explicitness of defense counsel's argument—"When you look at the circumstances overall, you will find that he was not intending to sell that marijuana. He had certain [medical] conditions . . . . And that's what he was using it for"—the jury could hardly have missed the point.

[10] Defendant asserts that the question of whether the Court of Appeal correctly reversed his conviction for possession for sale is not before us because the Attorney General only "sought review of the Court of Appeal decision as it applied to the transportation charge." This is not accurate. The Attorney General's petition for review and his opening brief specifically argued that the jury's finding that defendant possessed the marijuana with intent to sell precluded a finding of prejudice arising from the trial court's failure to give a CUA instruction. The Attorney General did not limit that analysis to the transportation charge and he requested that we reinstate defendant's conviction of both counts. Defendant's response to this argument similarly was not limited to the transportation count. Moreover, our order granting review did not limit the issues and under rule 29(b)(1) of the California Rules of Court we are empowered to "decide any issues that are raised or fairly included in the petition or answer." (Cal. Rules of Court, rule 29(b)(1).) In his brief, defendant requests that, if we reverse the Court of Appeal, we remand the case for that court to consider additional claims of instructional error it did not reach once it concluded that the trial court's failure to give a CUA instruction required

DISPOSITION

For the reasons stated above, the judgment of the Court of Appeal is reversed and the case is remanded for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.

**BAXTER, J.,** Concurring and Dissenting.—I concur in the majority's judgment, but I disagree sharply with certain of its intermediate conclusions. To place my views in context, I briefly review the facts and procedural background.

In 2001, defendant was arrested while transporting one pound three ounces of marijuana in his pickup truck. Officers stopped the truck on a tip and confirmed that it "reeked" of marijuana. Defendant twice denied there was marijuana in the truck. Yet a search of his backpack, which had been located on the passenger seat, revealed numerous baggies containing premeasured amounts of marijuana. The backpack also contained an electronic scale. Further searching revealed a one-pound brick of marijuana concealed in a storage compartment behind the passenger seat.[1] The truck contained no paraphernalia for personal use.

Defendant was charged with transporting marijuana (Health & Saf. Code, § 11360, subd. (a))[2] and possession of marijuana for sale (§ 11359). During his 2002 trial, at a hearing under Evidence Code section 402, he sought an instruction asserting, as to both charges, a defense authorized by the Compassionate Use Act of 1996 (CUA; § 11362.5). At the time of defendant's trial, this defense expressly applied only to medical patients who *possessed* or *cultivated* marijuana "for [their] personal medical purposes" upon a physician's recommendation or approval. (*Id.*, subd. (d).) However, Courts of Appeal had split on the issue whether the defense implicitly extended to an eligible patient's *transportation* of marijuana for personal medical use.

---

reversal. This request further underscores defendant's understanding that the Attorney General's prejudice argument potentially affected both counts. In light of our reversal of the Court of Appeal, we will remand the case to allow the court to consider defendant's further claims of error.

[1] According to an August 30, 2006, press release by the White House Office of National Drug Control, the current street value of a pound of marijuana is about $4,000. (White House Off. of Nat. Drug Control, Press Release (Aug. 30, 2006); online at <http:www.whitehousedrugpolicy.gov/about/index.html> [as of Nov. 27, 2006].) On that assumption, defendant was arrested while transporting marijuana with a street value of about $4,750.

[2] All further unlabeled statutory references are to that code.

At the hearing, defendant offered testimony that he was an eligible patient who was transporting amounts necessary and reasonable for his particular needs. He also testified that he actually was transporting the marijuana for his personal medical use. The court nonetheless refused the instruction. It ruled that the CUA defense did not apply to a charge of possession *for sale*, and was also not appropriate for the transportation of "one pound, three ounces of marijuana." However, the court permitted defendant to put on evidence that the marijuana was for his personal use as proof he did not possess it with intent to sell. After the defense presented its case at trial, defendant renewed his request for CUA defense instructions. The request was again denied.

Defendant was convicted on both counts. The Court of Appeal reversed, concluding that the trial court's failure to instruct on the CUA defense was prejudicial error as to both convictions. We granted the People's petition for review. Our initial aim was to resolve the Court of Appeal conflict on the application of the CUA defense to a charge of transporting marijuana. While review was pending, however, the Legislature adopted the Medical Marijuana Program (MMP; § 11362.7 et seq.), which expressly extends a CUA defense to the marijuana crimes of transportation, and possession for sale, *insofar as the marijuana was possessed and/or transported by an eligible patient for his or her personal medical purposes.* (§ 11362.765, subds. (a), (b)(1).)

The majority holds that the MMP applies retroactively to defendant's case. It further determines that the trial court "erred" by failing to instruct on the CUA defense now authorized by the MMP, because defendant adduced evidence sufficient to raise a reasonable doubt concerning both his medical eligibility to use the quantity of marijuana with which he was arrested, and his actual intent to use it only for his personal medical purposes. However, the majority concludes, this "error" was harmless, because the jury necessarily rejected any CUA defense when, under proper instructions defining the offense of possession *for sale*, it convicted him of that charge.

I acknowledge that the MMP extends a limited CUA defense to the particular charges defendant faced. I also concur in the majority's holding that the MMP applies retroactively to defendant's case. I further agree that, even if the MMP technically would have warranted a CUA defense instruction on either or both the charged offenses, no retrial is necessary. As the majority indicates, defendant's conviction of possession for sale, upon instructions that correctly defined all the elements of that offense, proves that the absence of a CUA defense instruction did not affect the trial outcome.[3]

---

[3] Indeed, the jury found defendant possessed the marijuana with intent to sell it despite hearing defendant's evidence that the marijuana was for his personal medical use, as approved by a physician.

Additionally, however, I conclude, contrary to the majority, that defendant did not produce enough evidence to justify an instruction on the CUA defense pursuant to the MMP.

As the majority concedes, the CUA defense authorized by the MMP has *three* prongs, and defendant would not have been entitled to an MMP instruction on the defense unless he raised a reasonable doubt with respect to *all three.* Upon his failure to do so, the trial court, in the exercise of its "gatekeeping" function (see *People v. Mower* (2002) 28 Cal.4th 457, 475–476 [122 Cal.Rptr.2d 326, 49 P.3d 1067]; *People v. Jones* (2003) 112 Cal.App.4th 341, 350 [4 Cal.Rptr.3d 916] (*Jones*); see also *People v. Lucas* (1995) 12 Cal.4th 415, 466 [48 Cal.Rptr.2d 525, 907 P.2d 373]), could and should have ruled that the evidence was insufficient to allow the defense to go to the jury.

Thus, to justify a CUA defense instruction under the MMP, defendant must have adduced creditable evidence, *first*, that he was a "qualified patient," in that a licensed physician had recommended or approved his personal use of marijuana to treat a condition specified in the CUA (see §§ 11362.715, 11362.765, subds. (a), (b)(1)), *second*, that the quantity possessed or transported, to the extent it exceeded eight ounces of dried marijuana, was consistent with his particular medical needs, as approved by a physician (§ 11362.77, subds. (a), (b)), and *third*, that the marijuana on which the charges are based actually was "for his . . . own personal medical use" (§ 11362.765, subd. (b)(1)).

I am persuaded defendant did not satisfy this minimal burden as to any of the prongs of the defense. Defendant's proffered evidence that he was a qualified medical marijuana patient at the time of his arrest was extremely weak. At the Evidence Code section 402 hearing, Dr. Richard Eidelman testified he had *twice* given *written* approval for defendant's medical use of marijuana. At trial, both defendant and Dr. Eidelman reiterated this claim.[4] However, these writings were not produced. Though written approval is not required, this lapse undermines the credibility of the "qualified patient" claim. Moreover, as the officers had testified, defendant, when arrested, did not identify himself as a medical marijuana patient, and he denied the presence of marijuana in his truck, thereby suggesting consciousness of guilt.

Under proper circumstances, bare testimonial assertions of a physician's approval may be sufficient evidence of the defendant's status as a qualified

---

[4] The majority notes defense counsel argued that the testimonial evidence that Dr. Eidelman approved defendant's medical use of marijuana was "uncontroverted." (Maj. opn., *ante,* at p. 88.) However, both at the Evidence Code section 402 hearing, and at trial, the court allowed the prosecution to impeach Dr. Eidelman's credibility with evidence that he was then under investigation by the California Medical Board for numerous alleged violations of the Business and Professions Code in connection with his license to practice medicine in this state.

patient. (*Jones, supra,* 112 Cal.App.4th 341, 350–351.) Here, however, such claims simply evaporate in light of the powerful contrary indicia that defendant was not a qualified user who was transporting marijuana for legitimate purposes.

Even more deficient was defendant's evidence that he had medical approval to possess quantities in excess of eight dried ounces. Both defendant and Dr. Eidelman testified that the first of Dr. Eidelman's two written approvals, issued prior to defendant's arrest, was for an unspecified "self-regulating dosage." In my view, such a vague and open-ended authorization fails, as a matter of law, to constitute the specific determination the MMP requires—i.e., "a doctor's recommendation that [eight dried ounces] *does not meet* the qualified patient's medical needs." (§ 11362.77, subd. (b), italics added.)

As defendant and Dr. Eidelman further testified, it was only *after* the arrest that defendant obtained Dr. Eidelman's second approval, which conveniently endorsed the specific amount of marijuana that *already* had been found in defendant's backpack and truck. But, for obvious reasons, absent " 'exigent circumstances' " not present here, the CUA defense cannot apply to a physician's *postarrest* ratification of self-medication on marijuana. (*People v. Rigo* (1999) 69 Cal.App.4th 409, 412 [81 Cal.Rptr.2d 624]; see also *People v. Trippet* (1997) 56 Cal.App.4th 1532, 1548, fn. 13 [66 Cal.Rptr.2d 559].)

Finally, I conclude, the overwhelming evidence that defendant possessed the marijuana *with the intent of selling it* precluded a reasonable doubt as to its personal medical purpose. This evidence prominently included the electronic scale, the presence of which defendant never explained.

Moreover, as Justice Sills aptly observed in his dissent below, the marijuana at issue here was not found in "one large bag . . . , as one would expect . . . if it was for a single individual's personal use. [On the contrary], it was found in nine different portions: Two very large baggies, each containing 30.6 grams of marijuana, seven small baggies in approximately equal amounts[,] and a large 'brick' of [marijuana] wrapped in a shirt which weighed about a pound. Six of the small baggies were located in a black bag along with [the] electronic scale. The brick was found [secreted under] the truck's back seat; the large baggies were found in [defendant's] backpack but not in the same section with the scales and the small baggies of marijuana. It is particularly noteworthy that [defendant] was carrying a single small baggie of marijuana in his pocket, separate from all the other parcels, as if that were his personal property as distinct from the large supply available for distribution."

Sergeant Cuadras, an experienced narcotics officer who participated in the search and arrest, gave his expert opinion that the marijuana was for sale, not for personal use. He based this opinion, inter alia, on the way the marijuana was packaged, the large amount of marijuana concealed in the truck's storage compartment, and the presence of the electronic scale.

The MMP recognizes the possibility that, with specific medical approval, qualified patients may be entitled to handle significant amounts of dried marijuana for their personal medical use. (See § 11362.77.) Yet the overwhelming evidence detailed above essentially negates an inference that defendant was transporting this very large quantity of marijuana under such circumstances.[5] In sum, his evidence of personal medical use failed to establish, for purposes of entitlement to a CUA instruction, a reasonable doubt that he possessed and transported the marijuana with intent to sell it.

Accordingly, I conclude, an instruction on the CUA defense was not warranted under the MMP, and the trial court's ruling to that effect would have been correct. On this basis alone, I would reverse the Court of Appeal's judgment and reinstate defendant's convictions.

One additional point warrants comment. The majority consistently applies the term "error" to the trial court's instructional rulings, even though the majority relies *solely* on statutory law that was *not in effect* when the trial court acted. Of course, we do not expect clairvoyance from our courts. Indeed, a judicial ruling that departed from *then-current* law would itself be error. Thus, even assuming a CUA instruction was warranted, nunc pro tunc, by virtue of the later-enacted MMP, I would not imply criticism of a diligent and hard-pressed trial court by labeling its failure to anticipate this statute as "error."

Instead, it is sufficient to determine, in hindsight, whether the MMP, as retroactively applied, justified a CUA instruction in defendant's case, and, if so, whether the absence of the instruction influenced the outcome, thus rendering the trial unfair by current standards. If the answer is "yes," we can and should simply remand for a new trial, without citing trial court "error" as the reason.

---

[5] The majority notes defendant testified that the large quantity was necessary and reasonable because he preferred to eat, rather than smoke, marijuana. However, Sergeant Cuadras testified that in his experience he had never encountered someone transporting a pound and three ounces of marijuana for the purpose of eating it.

As indicated, I, unlike the majority, do not believe the MMP would justify a CUA instruction on the facts of this case. Assuming, however, that the majority is correct on that point, I agree, for the reasons expressed in its "harmless error" analysis, that omission of the instruction did not affect the trial outcome, thus rendering the trial unfair. I therefore concur in the judgment of reversal.

On December 20, 2006, the opinion was modified to read as printed above.