Filed 1/7/26  P. v. Salas CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084696 |
| v. | (Super.Ct.No. FWV21004537) |
| VICTOR MANUEL SALAS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Joseph B. Widman, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Brendon Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

Victor Manuel Salas appeals from the judgment entered after he pled no contest to possession of a firearm and ammunition by a felon.  (Pen. Code, §§ 29800, subd. (a)(1),

1

30305, subd. (a)(1); unlabeled statutory citations are to this code.) He contends that the trial court erred by denying his motion to quash the search warrant that led to his arrest, because it was not supported by probable cause and was overbroad. We disagree and affirm.

BACKGROUND

The evidence that led to the charges against Salas was obtained through the execution of a search warrant, which was based on evidence discovered through execution of a prior search warrant.

I. *The first search warrant*

On June 18, 2021, Officer Nolan Falconieri of the Fontana Police Department applied for a search warrant for a single-story residence in Fontana, California. In his supporting affidavit, Falconieri attested that the victim reported that several power tools had been stolen from his construction yard "[a]pproximately two weeks ago." The victim believed that "another burglary would occur," so he "placed a tracking device on a water pump located on the property." When the victim arrived at the construction yard on June 18, 2021, he noticed that the water pump had been stolen. He also told Falconieri that "there were several distinct BF Goodrich tire marks in the dirt lot of his yard, which did not match any of his company's vehicles." The victim checked the tracking device, and "it was pinging in the backyard" of the residence for which the warrant was sought. About one hour later, Falconieri drove past the residence and saw "a large white truck with BF Goodrich tires, which matched the tire tracks located at the victim's construction yard." Falconieri checked department records "and discovered several subjects have

2

been contacted, detained, or arrested at the residence who have been in possession or have a history of being in possession of stolen property." Falconieri described the backyard of the residence as "a large dirt lot" with "several covered vehicles and large tents with unknown items. There is ample room and opportunity for the stolen water pump to be concealed in the backyard."

Falconieri described the property to be searched as a single-story residence, including "all rooms, attics, basements and other parts therein, and the surrounding grounds and any garages, storerooms and outbuildings of any kind located thereon. Vehicles described as follows: Any vehicles and persons located within the property or on the property. [¶] And all persons present during the service of the search warrant, and their vehicles in which they are in control of."

Falconieri described the property to be seized as follows: "(1) Stolen water pump or water pump pieces that may be stripped off the pump[.] (2) Tools used to steal/modify/alter power tools/vehicles. (3) Any and all property which is proved to be stolen or has serial numbers removed. (4) Any narcotic, controlled substance or drug. (5) All monies. (6) To answer and record any property theft transactions at the phone or phones located at the place to be searched. (7) Weapons including the following: rifles, shotguns, semi-automatic weapons, assault rifles, machine guns, revolvers, semi-automatic handguns, machine pistols and any ammunition, holsters, carrying cases, accessories, clips and magazines for the above listed items. (8) All documents identifying co-conspirators. (9) Cameras, monitors, and all items related to video surveillance equipment. [¶] And articles of personal property tending to establish the

3

identity of persons in control of premises, vehicles, storage areas and containers being searched, consisting of, but not limited to, utility company receipts, rent receipts, addressed envelopes and keys and to SEIZE it if found and bring it forthwith before me, or this court, at the courthouse of this court."

The warrant was issued on June 18, 2021. The search pursuant to the warrant led to recovery of the water pump, but the other stolen items were not found.

II.     *The second search warrant*

On June 19, 2021, Falconieri sought a second search warrant to recover "several outstanding stolen power tools that were taken from the victim's property." In his supporting affidavit, Falconieri attested that "[a]pproximately two weeks ago, the victim advised his construction site was burglarized, and several power tools and vehicles were stolen." "The victim stated approximately two days prior to the burglary, he observed a very distinct GMC truck with a black cab, white rear and front fenders, a ball hitch, and large BF Goodrich tires driving slowly past his property for an unknown reason." "Due to the initial theft approximately two weeks ago, the victim placed a discreet tracker on this power tool" on the property, and the power tool was stolen on June 18, 2021. The victim tracked the power tool to an address in Fontana. Falconieri affirmed that he observed "the site of the burglary, and [he] noticed several large tire tracks which matched the tracks of a BF Goodrich tire"; the victim reported that "none of his company's trucks have BF Goodrich tires." Falconieri surveilled the area of the Fontana address, and he "immediately observed a full size GMC truck with a black cab, white front and rear fenders, a ball hitch on the back, and large BF Goodrich tires. This truck

4

was extremely distinct in its paint job and modifications, and [Falconieri had] never observed any truck similar to it." He believed that because the truck was parked near the "ping of the tracker," the truck "was possibly involved in the burglary of the power tools."

Falconieri stated that a records check of the GMC truck showed that it was registered to Daniel Salas (Daniel) at an apartment with an address "directly next door" to the residence where the water pump had been found pursuant to the first warrant.

Falconieri conducted a records check for Daniel and "discovered he has a history of property theft," and the address on his driver's license was the same address where the truck was registered. Falconieri attested that many of the missing power tools were "small enough to be concealed inside [Daniel's] apartment or truck."

Falconieri described the property to be searched as the apartment with the address on Daniel's driver's license, including "all rooms, attics, basements and other parts therein, and the surrounding grounds and any garages, storerooms and outbuildings of any kind located thereon. Vehicles described as follows: Any vehicles and persons located within the property or on the property." Falconieri described the property to be seized in the same manner as described in the first warrant.

The warrant was issued on June 19, 2021. During the search pursuant to the warrant, officers discovered a firearm and ammunition in a dresser in Salas's bedroom in the apartment.

5

III.    *The preliminary hearing*

At the preliminary hearing in March 2022, Falconieri testified that on June 25, 2021, he conducted the search pursuant to the second search warrant. Salas and a woman were present in the apartment at the time. Falconieri testified that he searched the middle bedroom and found "several pieces of mail addressed to Salas." He also found "a functioning firearm and it was operational. And it had 13 rounds of ammunition in the magazine. And the magazine was inserted into the firearm when I located it." He testified that after he read Salas his rights, Salas admitted to "residing in the middle bedroom" and that he knew "about the firearm in his dresser."

On cross-examination, Falconieri testified that the investigation was related to "[s]everal [stolen] power tools." He testified that the dresser drawer where he found the firearm and ammunition was "about two feet wide and a foot deep back into the dresser." He also testified that Daniel "lives at the location" and that "[t]he truck was registered to Daniel."

Following the preliminary hearing, the People charged Salas with one count of possession of a firearm by a felon in violation of section 29800, subdivision (a)(1), and one count of unlawful possession of ammunition in violation of section 30305, subdivision (a)(1).

IV.    *Motion to quash the second search warrant*

In March 2023, Salas filed a motion to quash the second search warrant. He argued that the second search warrant "fail[ed] to establish probable cause for its issuance, and a reasonably well-trained officer would have known that the affidavit was

6

insufficient and would not have applied for a warrant." He contended that "[t]he warrant, on its face, fails to establish probable cause because Officer Falconieri's claim that a BF Goodrich tire made the impression or track at the location of the alleged theft is obviously false; the officer's claim is without explanation and completely unsupported by experience or expertise. Accordingly, the officer could not have acted in good faith in either seeking or executing the search warrant."

At the hearing on Salas's motion, the court stated that its "tentative opinion on [the motion to quash the second warrant] is that there is probable cause. That there was a substantial basis for the magistrate to find probable cause in the four corners of the warrant. Essentially, you have a situation where the victim gave a very, very detailed description of the vehicle, that the victim told the officer two days prior to the earlier burglary had slowly driven past his property and out of view. Plainly, the victim was suspicious of the truck and was giving his information to the police as essentially a lead in connection with that burglary from two weeks earlier, and also the new burglary which had just taken place the same day as the report to the police June 18th. [¶] The description of the truck was very detailed. It was described in the warrant as a very distinct GMC truck with a black cab, white rear and front fenders, a ball hitch, and large BF[ ]Goodrich tires. The officer I believe later described it as extremely distinct in its paint job and modifications. Adding, 'I have never observed any truck similar to it.' So the police go to where the tracker was beeping from or signaling from and of all the places in the county or the world where this particular truck was parked, it was parked at the same place basically where the tracker was beeping. [¶] Under the circumstances,

7

the officer had good reason in the Court's view to strongly suspect that that truck was involved in one or both of these burglaries. Even putting aside the track marks. I agree with the defense that there is a lack of foundation for the track marks statements made by the officer in the affidavit. There is just insufficient foundation. The officer states he's done a hundred grand theft auto investigations including arrests and interviews, including learning about how—trends of how cars are stolen, et cetera. But there's nothing about any expertise for tire mark identification. So I am not considering the track mark—the tire mark evidence in deciding whether there is probable cause. I don't give any weight to it because I think it lacks foundation. But the rest of the warrant, I think does meet the standard. [¶] Also, adding to the fact that this very distinct truck was at the same location where it was beeping, subsequent investigation set forth in the affidavit stated that the owner of the vehicle Daniel Salas has a history of property theft in the past according to a records check." The court concluded that "looking at the four corners and discounting or basically reading out practically the tire mark issue, I still think that the motion should be denied under the applicable standards. That's my tentative."

Defense counsel argued that the second warrant was "anything but specific. This had absolutely no description whatsoever." Counsel acknowledged that the victim and Falconieri were "very descriptive" in depicting the truck, but counsel argued that "what they're looking for and they're saying we had items stolen, they don't even ask what description. What items? What is stolen? No idea. Yet this search warrant is looking for some unknown items. How possibly could this be handed to some unfamiliar officer and he know what to search for? Which is the standard for a search warrant."

8

The court denied the motion, concluding that the warrant was not "unconstitutionally vague in terms of the items to be seized."

In September 2024, Salas pled no contest to both counts. The court sentenced him to 180 days in county jail and two years of formal probation, with a three-year suspended prison term.

DISCUSSION

Salas argues that the court erred by denying his motion to quash the search warrant, because it was not supported by probable cause. We disagree.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures," and it provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend; see also Cal. Const., art. I, § 13; Pen. Code, § 1525.) A magistrate ruling on a warrant application must determine "whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238.)

"'To satisfy the demands of the Warrant Clause, a warrant must comply with two related but distinct rules. First, it must describe the place to be searched or things to be seized with sufficient particularity, taking account of "the circumstances of the case and the types of items involved." [Citation.] Second, it must be no broader than the probable

9

cause on which it is based. [Citation.] The particularity rule and the probable cause rule serve a common purpose: to protect privacy by prohibiting "a general, exploratory rummaging in a person['s] belongings." [Citation.] Although the two rules serve the same ultimate purpose, they achieve the purpose in distinct ways.'" (*Price v. Superior Court* (2023) 93 Cal.App.5th 13, 35.)

"The magistrate's determination will not be overturned unless the supporting affidavit fails as a matter of law to support the finding of probable cause." (*Fenwick & West v. Superior Court* (1996) 43 Cal.App.4th 1272, 1278.) "'In reviewing the trial court's suppression ruling, we defer to its factual findings if supported by substantial evidence. We independently assess the legal question of whether the challenged search or seizure satisfies the Fourth Amendment.'" (*People v. Meza* (2023) 90 Cal.App.5th 520, 536.)

Salas argues that "there was absolutely nothing connecting the theft of the water pump and tools to [Salas's] apartment," because "[t]he water pump was located at [Daniel's] residence," i.e., the single-story residence that was the subject of the first search warrant. Because "Falconieri did no follow up on who rented the apartment" and "did not conduct surveillance to see if Daniel . . . lived there or entered or exited the apartment," the second warrant application was based on "[n]othing more" than "speculation that because Daniel . . . registered his truck there, police would likely find stolen power tools there."

The argument fails for two reasons. First, Salas cites no basis for his assumption that Daniel lived at the residence that was the subject of the first warrant, and we are not

10

aware of any. Second, Salas's argument omits a relevant piece of evidence: The affidavit supporting the second warrant application stated not only that Daniel's truck was registered at the apartment but also that the apartment's address was the same address listed on Daniel's driver's license. Given that Daniel registered his truck at the apartment and listed the apartment as his address on his driver's license, the magistrate could reasonably infer that Daniel lived there. The connection between the thefts and the apartment consequently was not speculative. Rather, the affidavit provided probable cause to connect the thefts with the truck, the truck with Daniel, and Daniel with the apartment.

Salas also argues that the warrant was impermissibly overbroad because the "warrant sought to search for (and therefore seize) narcotics and firearms without a scintilla of factual support in the affidavit." The People concede that the warrant was not supported by probable cause to search for firearms and ammunition, but they argue that the discovery of the gun and the ammunition in Salas's dresser drawer was inevitable. We accept the People's concession and agree that discovery was inevitable.

"The inevitable discovery doctrine acts as an exception to the exclusionary rule and permits the admission of otherwise excluded evidence if the prosecution can establish by a preponderance of the evidence that the information would have been inevitably discovered by lawful means, such as routine police procedures." (*People v. Banks* (2023) 97 Cal.App.5th 376, 383.) "The ultimate or inevitable discovery exception to the exclusionary rule is closely related in purpose to the harmless-error rule of *Chapman v. California*, 386 U.S. 18, 22 (1967). The harmless-constitutional-error rule '[serves] a

11

very useful purpose insofar as [it] [blocks] setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial.' The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct." (*People v. Nix* (1984) 467 U.S. 431, 443, fn. 4.)

As previously discussed, the application for the second search warrant was supported by a showing of probable cause to search the apartment for the missing power tools. As the People concede, the application contained no facts showing probable cause to believe that the police would find firearms or ammunition in the apartment, so the warrant's description of the property to be seized was overbroad as to those items. But Falconieri's affidavit stated that many of the power tools were "small enough to be concealed inside [the] apartment or truck." That description was sufficient to justify searching the dresser drawer in Salas's room in the apartment, and that is where the firearm and the ammunition were found. Thus, the search of the apartment to locate the tools, which was authorized by the warrant, would have inevitably led to discovery of the firearm and the ammunition even if the warrant had not mentioned firearms and ammunition.

Salas's only response to the People's inevitable discovery argument is that the entire search was illegal because "the police never provided probable cause to search appellant's apartment at all." For the reasons already explained, that argument lacks merit. We therefore conclude that even though the warrant was not supported by

12

probable cause as to firearms and ammunition, the firearm and ammunition found in Salas's room were admissible under the inevitable discovery doctrine.

For all of the foregoing reasons, Salas has not shown that the trial court erred by denying his motion to quash.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

CODRINGTON

Acting P. J.

RAPHAEL

J.

13